COMMONWEALTH of Pennsylvania, Appellee

v.

**Jane C. ORIE, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 10, 2013.

Filed March 6, 2014.

William Costopoulos, Lemoyne, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: DONOHUE, J., OTT, J., and PLATT, J.*

* Retired Senior Judge assigned to the Superior Court.

OPINION BY OTT, J.:

Jane C. Orie brings this appeal from the judgment of sentence imposed on June 4, 2012, in the Court of Common Pleas of Allegheny County. Orie was found guilty by a jury of theft by diversion of services (two counts), conspiracy—theft by diversion of services, conflict of interest (two counts), and tampering with or fabricating physical evidence (two counts)[1] (Docket No. 10285–2010). On a separate information, the jury found Orie guilty of forgery (two counts), and tampering with or fabricating physical evidence (five counts)[2] (Docket No. 12098–2011). The trial court sentenced Orie to an aggregate sentence for both cases of 30 to 120 months' imprisonment, and ordered Orie to pay restitution,[3] and reimbursement for outside counsel fees incurred by the Senate Republican Caucus (Caucus) in the amount of $110,650.00, pursuant to 18 Pa.C.S. § 5303. Orie presents ten questions for our review, involving issues of double jeopardy, preclusion of testimony, suppression, weight and sufficiency of the evidence, reimbursement under 18 Pa.C.S. § 5303, merger, alleged animus of the prosecutor, and the constitutionality of Pennsylvania's conflict of interest statute, 65 Pa.C.S. § 1103(a). Based upon the following, we affirm.

The case at Docket No. 10285–2010 began after a graduate student intern filed a handwritten complaint with the Office of the District Attorney of Allegheny County, alleging that while she worked in the district office of Orie, a Pennsylvania Senator representing the 40th Senatorial District, she had observed staff members engaging in political campaign work. The case pro-ceeded to trial, but ended in a mistrial when, during jury deliberations, altered defense exhibits were discovered. That discovery led to the charges at Docket No. 12098–2011. As the trial court more fully explained:

> ... [Orie] was originally charged at [Docket No.] 201010285, pursuant to a presentment issued by the A2008 Allegheny County Investigating Grand Jury on April 4, 2010, with three counts of Theft by Diversion of Services (18 Pa. C.S.A. § 3926(b)); one count of Criminal Conspiracy–Theft by Diversion of Services (18 Pa.C.S.A. § 903(A)(1)); three counts of Violating the Conflict of Interest Statute (65 Pa.C.S.A. § 1103(a)); and three counts of Tampering [W]ith [or] Fabricating Physical Evidence (18 Pa.C.S.A. § 4910(1)).
>
> The first trial on those charges ended in a mistrial on March 3, 2011.[1]

---

[1] [Orie] was tried together with Janine Orie, her sister, who was charged with similar offenses.

The case was scheduled for retrial. [Orie] filed a motion seeking to bar the retrial on double jeopardy grounds. In an Opinion and Order dated April 5, 2011, the Motion was denied. [Orie] filed a Petition with the Superior Court seeking leave to file an interlocutory appeal from the denial of her Motion seeking to bar the retrial on double jeopardy grounds. The Superior Court denied the Petition on April 13, 2011 on the basis that the appeal was frivolous and [Orie] filed a Petition for Allowance of Appeal from the Supreme Court. On

---

**1.** 18 Pa.C.S. § 3926(b), 18 Pa.C.S. § 903(a)(1), 65 Pa.C.S. § 1103(a), and 18 Pa. C.S. § 4910(a), respectively.

**2.** 18 Pa.C.S. §§ 4101(a)(3), and 4910(2), respectively.

**3.** The court ordered Orie to pay restitution as follows: (1) $23,269.74 based upon the theft of services convictions, 18 Pa.C.S. § 3926(b); (2) cost of prosecution; and (3) $46,537.48, pursuant to 65 Pa.C.S. § 1109(c) (treble damages). See Order, 7/3/2012.

June 23, 2011 the Supreme Court vacated the Superior Court order as it pertained to the determination that the appeal was frivolous and remanded the matter to that Court to address that issue.[2]

[2] [Orie] also appealed [the trial] Court's denial of the request made, with the filing of the Motion to Dismiss, that [the trial] Court recuse. The Supreme Court affirmed the Superior Court's ruling affirming [the trial] Court's denial of the Motion to Recuse.

The Superior Court, in turn, remanded the matter to [the trial] Court to prepare a supplemental Opinion on the issue of frivolousness. That Opinion was filed on July 14, 2011 and the matter was retransmitted to the Superior Court. In an Order dated August 31, 2011, the Superior Court affirmed. A Petition for Allowance of Appeal was filed but denied by the Supreme Court on September [27], 2011.

On August 29, 2011, [Orie] was charged, at [Docket No.] 201112098 with sixteen (16) additional criminal offenses. These new offenses arose out of the events that occurred at the first trial that caused the Court to declare a mistrial. . . . In essence, forged documents were offered into evidence by the defense at that trial; documents that were authenticated by [Orie] and admitted into evidence by the Court. It was not until jury deliberations had commenced that the forged nature of the documents was discovered. The investigation into those documents led to the additional charges.

[At Docket No. 201112098, Orie] was charged with five (5) counts of Perjury (18 Pa.C.S.A. § 4902(a)); two (2) counts of Forgery–Uttering a Forged Writing (18 Pa.C.S.A. § 4101(a)(3)); six (6) counts of Tampering With or Fabricating Physical Evidence (18 Pa.C.S.A. § 4910(2)); one count each of Obstruct-

ing the Administration of Law or Other Governmental Function (18 Pa.C.S.A. § 5101); Perjury Under the Election Code (25 Pa.C.S.A. § 3502); and one count of Violating the Election Code Regarding the Reporting Obligations of Candidates (18 Pa.C.S.A. § 3246(a)).[3]

[3] The new charges were joined for trial with the original charges. The case of the co-defendant, Janine Orie, was severed from this trial because of the new charges against this defendant, which did not involve Janine Orie.

This matter proceeded to trial before a jury on February 27, 2012. On March 26, 2012, the jury returned verdicts at both cases. At [Docket No.] 201010285, the jury found [Orie] guilty of the Theft by Diversion of Services charges at Counts 1 and 3; the Conspiracy charge at count 4[;] the Conflict of Interest charges at counts 5 and 6; and [ ] the Tampering With or Fabricating Physical Evidence charges at counts 8 and 9. The jury found [Orie] not guilty of the Theft by Diversion of Service charge at count 2; the Conflict of Interest charge at count 7; and the Tampering [W]ith or Fabricating Physical Evidence charge at count 10.

At [Docket No.] 201112098, the jury found [Orie] guilty of Forgery charges at counts 6 and 7; [five] of the [six] Tampering With or Fabricating Physical Evidence charges, filed at counts 8, 9, 10, 11 and 12; [Orie] was found not guilty of the five (5) Perjury counts, five (5) Perjury charges at counts 1 through 5; the Tampering With or Fabricating Physical Evidence charge at Count 13; the Obstruction of Justice charge at count 14; the Perjury charge at count 15; and the Election Code Reporting Violation at count 16. Sentencing was originally scheduled for May 21, 2012, but was postponed. The Commonwealth filed a Petition with the Court seeking,

in addition to standard restitution and costs of prosecution, reimbursement pursuant to 18 Pa.C.S.A. § 5303 and for the imposition of the penalty provided for 65 Pa.C.S.A. § 1109. The defense filed a Memorandum in Opposition.

On June 4, 2012, [Orie] was sentenced, at [Docket No.] 201010285, to not less than six (6) nor more than twenty-four (24) months at counts 1, 3 and 4, to run consecutive to one another, for an aggregate term of imprisonment at that case of not less than eighteen (18) nor more than seventy-two (72) months. No penalty was imposed on the remaining counts for which a verdict of guilty was returned.

At [Docket No.] 201112098, the Court sentenced [Orie] to not less than four (4) nor more than twelve (12) months at each of the two Forgery counts; to not less than two (2) nor more than twelve (12) months at the Tampering With Physical Evidence charges at counts 8 and 10, and to no further penalty on the remaining counts. Those sentences were likewise ordered to run consecutive to one another and consecutive to the sentences imposed in the other case. The aggregate sentence imposed for both cases was not more than thirty (30) nor less than one hundred and twenty (120) months incarceration [sic]. The Court deferred the ruling on the request for restitution and reimbursement pend-

ing a further hearing and the submission of briefs by the parties. In the Memorandum Opinion [and Order] filed on July 3, 2012, the Court addressed the request for restitution and reimbursement.[4]

Trial Court Opinion, 1/17/2013, at 2–6.

On June 15, 2012[5], Orie timely filed post-sentence motions, which were denied by the court on August 29, 2012. Orie then filed a notice of appeal on September 6, 2012,[6] and filed her Pa.R.A.P. 1925(b) statement of errors complained of on appeal on September 25, 2012. The trial judge, the Honorable Jeffrey A. Manning, filed his Rule 1925(a) opinion, dated December 28, 2012, on January 17, 2013. This opinion supplemented five previous opinions that address issues raised in this appeal.[7]

The trial court opinion and record were transmitted to this Court on March 14, 2013. Thereafter, Orie timely filed her brief on April 22, 2013, and the Commonwealth timely filed its brief on June 12, 2013, having requested and been granted an extension of time. Orie filed a reply brief on June 25, 2013. This appeal was then listed for oral argument on the first available list in Pittsburgh, scheduled to convene September 24–26, 2013. However, the appeal was removed from the argument list on August 22, 2013, due to recusal issues, and returned to the Prothonotary of this Court for relisting. On

---

4. See Footnote 3, *supra*.

5. June 14, 2012 was Flag Day and the courthouse was closed.

6. The appeal was docketed in this Court on September 10, 2012.

7. See Trial Court Opinion, 1/24/2011 (addressing constitutionality of conflict of interest statute, 65 Pa.C.S. § 1103(a)); Trial Court Opinion, 2/4/2011 (addressing Orie's motion to suppress); Trial Court Opinion, 4/5/2011 (addressing Orie's motion to dismiss on double

jeopardy grounds, motion to recuse, motion for appointment of Attorney General of Pennsylvania, and motion for continuance); Trial Court Opinion, 7/14/2011 (addressing Commonwealth's petition for an evidentiary hearing to complete certified record, and determination of frivolousness of Orie's appeal from denial of motion to dismiss); and Trial Court Opinion, 7/3/2012 (addressing Commonwealth's request for, *inter alia*, reimbursement pursuant to 18 Pa.C.S. § 5303).

September 18, 2013, Orie filed an application for relief, requesting that the case be relisted for argument in October, 2013. In response, this Court, on September 26, 2013, issued a *per curiam* order, granting the application to the extent that the appeal would be listed for argument before the panel sitting in Harrisburg on December 10–12, 2013. Oral argument took place as scheduled on December 10, 2013.

Orie presents the following questions for our review:

I. Whether the retrial should have been barred on state and federal double jeopardy grounds because the trial court lacked the "manifest necessity" to declare a mistrial while the jury was deliberating in the first trial?

II. Whether the trial court erred in precluding the testimony of the longtime Senate Republican Chief Counsel Steve MacNett, who would have testified at the second trial as he did at the first that Senate policy permitted campaigning during the legislative day with the use of comp time which testimony was needed to rebut that of the prosecution witness, Russ Faber, Senate Chief Clerk, who testified to the contrary?

III. Whether the trial court erred in refusing to suppress the massive amounts of physical evidence in this case (documents, cell phone records, e-mails, computer hard drives, etc.) which evidence was obtained by search warrants that were general investigatory warrants, overbroad, "overseizing" and violative of the speech [and] debate clauses of the state and federal constitutions; furthermore, the taint team in place was procedurally defective?

IV. Whether the forgery convictions must be vacated and dismissed because there was insufficient evidence for the jury to conclude beyond a reasonable doubt that [Orie] was responsible for forging the subject documents or knowingly introducing them at the first trial?

V. Whether the forgery convictions were against the weight of the evidence because no rational juror could infer beyond a reasonable doubt on the evidence adduced that [Orie] was responsible for forging the subject documents or knowingly introducing them at the first trial?

VI. Whether the trial court erred in ordering over $110,000 in restitution be paid by [Orie] for legal fees and costs incurred by counsel for the Senate Republican Caucus when the Caucus is not an "agency" under [18 Pa.C.S. § 5303] and counsel almost exclusively represented the interests of the Caucus itself and not [Orie]?

VII. Whether [Orie's] theft sentences are illegal and should have merged because there was only one theft based on the underlying allegations involving Senator Orie and Justice Orie Melvin?

VIII. Whether the trial court erred in refusing to recuse the District Attorney's office from the instant prosecution because of its conflict of interest or personal animus or the appearance thereof?

IX. Whether the trial court erred in granting the prosecution's motion to preclude from trial any evidence of or argument about the longstanding political feud between the Zappala family and the Orie family

which was an essential part of the *res gestae* of this case?

X. Whether the Pennsylvania Conflict–of–Interest Statute is unconstitutionally vague on its face as well as vague and overbroad because it violates [Orie's] right of free speech and association protected by the First Amendment of the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution?

Orie's Brief at 6–7. We address these questions in the order in which they are set forth above.[8]

## I. *DOUBLE JEOPARDY*

In the first issue raised in this appeal, Orie challenges the trial judge's denial of her motion to dismiss the original charges based upon the claim of double jeopardy.

Prior to discussing this issue, some background information is necessary. As the excerpt from the trial court's opinion relates, after the initial case was scheduled for retrial due to a mistrial, Orie filed a number of motions, including, *inter alia*, a motion to dismiss on the grounds of double jeopardy, and a motion for recusal. The trial court denied the motions, and specifically found that the motion to dismiss was "frivolous as a matter of law." [9] Orie then appealed, proceeding as if the order was a final order under 42 Pa.C.S. § 742, and also seeking permission to appeal the order as an interlocutory order. This Court, by *per curiam* order of April 13, 2011,

treated the appeal as a petition for review, and denied relief. Orie then filed a petition for review in the Pennsylvania Supreme Court. The Supreme Court, treating the petition as a petition for allowance of appeal, granted the petition in part, vacated this Court's order regarding the double jeopardy challenge, and remanded the matter for this Court to review the trial court's determination of frivolousness. *See Commonwealth v. Orie*, 610 Pa. 552, 22 A.3d 1021 (2011) (clarifying procedure for a pretrial double jeopardy challenge dismissed as frivolous).

This Court, in turn, remanded the case to the trial court, giving that court and the parties a limited period to supplement their respective positions on the specific issue of frivolousness. The trial court reiterated its determination and, upon return of the record to this Court, this Court agreed with the trial court's finding that the motion to dismiss was frivolous. This Court affirmed the trial court's order, and the Pennsylvania Supreme Court denied Orie's petition for allowance of appeal. *See Commonwealth v. Orie*, 33 A.3d 17 (Pa.Super.2011), *appeal denied*, 613 Pa. 112, 32 A.3d 1195 (2011). The second trial proceeded before a jury on February 27, 2012, ending with Orie's convictions as set out above. Orie's challenge to the trial court's decision that rejected her double jeopardy claim is now before this Court for review on the merits.[10]

---

**8.** We have renumbered and reordered Orie's questions for purposes of our discussion.

**9.** Trial Court Order, dated 4/4/2011.

**10.** In Orie's prior appeal, the Pennsylvania Supreme Court instructed that "a defendant who has had a pre-trial double jeopardy challenge dismissed as frivolous may seek preliminary appellate review of that conclusion as of right" via a petition filed under the existing

procedures set forth in Chapter 15 of the appellate rules. *Commonwealth v. Orie*, 610 Pa. 552, 22 A.3d 1021, 1026 (2011). The Supreme Court emphasized that such review is "preliminary in nature," and "it does not answer the question of whether the trial court abused its discretion in declaring a mistrial," but rather "the appellate court's focus is on the finding of frivolousness." *Id.* at 1027–1028.

We begin with the following summary of the events that occurred at the first trial on March 3, 2011:

On March 3, 2011, as the jury was starting its first full day of deliberations, the Commonwealth informed the trial court that it believed there had been a fraud upon the court. The trial court halted jury deliberations. Following the arrival of defense counsel, the Commonwealth alleged that two defense exhibits had been forged. Ultimately, after permitting both parties to argue the appropriate remedy for the alleged forgery and allowing the Commonwealth to present expert testimony in support of the allegation that the documents were forged, the trial court declared a mistrial.

*Orie, supra,* 22 A.3d at 1023.

The details of the forged defense exhibits are extensively set forth in this Court's earlier decision concerning Orie's pre-trial double jeopardy challenge. *See Orie, supra,* 33 A.3d at 21–25. Specifically, the documents exhibited an altered signature of Pavlot. As the trial court explained:

After the recess [to allow the Commonwealth to secure the presence of a document examiner], the witness, George Papadopolous, testified that Jamie Pavlot's signature on both Exhibits 101–B and 110 had been cut from other documents and pasted on. He specifically concluded that the signature on Exhibit 110 was lifted from Exhibit 101–A.

*Id.* at 24, quoting Trial Court Opinion, dated 4/4/2011 (filed 4/5/2011). The trial court explained the nature of the documents, as follows:

The documents that this [c]ourt determined to have been altered were first identified during the cross examination of Ms. Pavlot. The defense presented her with fifty separate documents which allegedly contained written directives from [Orie] instructing Ms. Pavlot to make sure that campaign activities were not engaged in on State time. Although [Pavlot] recognized the typed portion of both of those documents, she did not recognize [the] hand written notations also included.

*Id.* at 29, quoting Trial Court Opinion, supra.

■ The crux of Orie's double jeopardy claim is her contention that the trial court lacked the "manifest necessity" to declare a mistrial. In examining this issue, we are guided by the following principles:

It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision. *Commonwealth v. Leister,* 712 A.2d 332, 334 (Pa.Super.1998) (citing *Commonwealth v. Gains,* [383 Pa.Super. 208, 556 A.2d 870] (Pa.Super.1989)); Pa.R.Crim.P. 1118(b) (amended and renumbered as Rule 605, effective April 1, 2001). Where there exists manifest necessity for a trial judge to declare a mistrial *sua sponte,* neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial. *Leister,* 712 A.2d at 335 (citing *Commonwealth ex rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 [ (1976)) ].

In *Commonwealth v. Diehl,* 532 Pa. 214, [216–17], 615 A.2d 690[, 691 (1992) ], our Supreme Court, when considering whether manifest necessity for the trial court's *sua sponte* declaration of a mistrial existed, stated:

Since Justice Story's 1824 opinion in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, it has

been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on [whether] there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976), citing *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). It is important to note that in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions. *Commonwealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980).

Pennsylvania Rule of Criminal Procedure [605(B)] provides that:

When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

In accordance with the scope of our review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616, 619 (1974), citing *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. *Commonwealth ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4 (1976). Finally, it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant. *Bartolomucci*, 468 Pa. at 347, 362 A.2d 234.

We do not apply a mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. "Rather, 'varying and often unique situations arise during the course of a criminal trial ... [and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated....'" *Leister*, 712 A.2d at 335 (quoting *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973)); *Commonwealth v. Morris*, 773 A.2d 192 (Pa.Super.2001).

*[Commonwealth v.] Kelly*, 797 A.2d [925,] 936–937 [ (Pa.Super.2002) ].

\* \* \*

■ ... [T]here can be no rigid rule for finding manifest necessity since each case is individual. *Commonwealth v. Rivera*, 715 A.2d 1136, 1138 (Pa.Super.1998). Moreover, as a general rule, the trial court is in the best position to gauge potential bias and deference is due the trial court when the grounds for the mistrial relate to jury prejudice.

*Arizona v. Washington,* 434 U.S. 497, 513–514, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). From his or her vantage point, the trial judge is the best arbiter of prejudice, because he or she has had the opportunity to observe the jurors, the witnesses, and the attorneys and evaluate the scope of the prejudice. *Id.*

*Commonwealth v. Walker,* 954 A.2d 1249, 1254–1256 (Pa.Super.2008), *appeal denied,* 600 Pa. 762, 967 A.2d 959 (2009) (footnote omitted).

The effect of the forged defense documents, which the jury then had in its possession,[11] was described by Judge Manning, as follows:

> THE COURT: At the previous hearing this morning the Court made essentially the same observations as the expert did, but I did not want it to be only the Court that was making those conclusions. That is why the expert has corroborated what the Court has found.
>
> These are critical documents that were not provided to the Commonwealth until the witness has testified. They were marked by counsel, they were used to cross-examine the witness, a crucial witness for the Commonwealth, causing her on a number of occasions to say that she never saw them. That was an attack on her credibility being the principal witness as I see it against [Orie].
>
> The documents were then identified and authenticated by [Orie] in her own testimony and offered into evidence.
>
> But the Court now has the situation where a jury has gone to deliberate the documents that are fraudulent. It is

evidence that strikes at the heart of the case. It is a fraud on the Court, it is on the jury, and on our justice system.

> And frankly, . . ., that is what is outrageous. It calls into suspicion every document that the defense offered. And it is deceitful, it is dishonest, it is despicable, and it is a crime. And I don't know who among the parties involved for the defense has done this, but I cannot allow this jury to continue with fraudulent information in front of them. Go get them.

N.T., 3/3/2011 at 33–34.

Judge Manning reasoned:

> The submission into evidence of documents that were altered worked a fraud upon this Court. . . . Such an attempt clearly occurred here.
>
> This Court was not dealing with fraud discovered after a judgment had been entered. . . . Nor was it dealing with a decision it had reached that was later determined to have been secured through the presentation of coerced, perjurious testimony, as occurred in *Commonwealth v. Harper,* [2006 PA Super 3,] 890 A.2d 1078 (Pa.Super.2006) (Superior Court affirmed decision by PCRA court to reverse its year old decision granting defendant a new trial where it was determined that testimony that led to new trial was perjured and witness was coerced into testifying). This Court was dealing with freshly discovered fraud; fraud that had not yet ripened into the subversion of justice that would have been the result had the

---

**11.** At the conclusion of the trial, the jury received the trial exhibits:

> [ORIE'S COUNSEL]: I guess now the question becomes, Judge, whether we take the grocery basket full of binders back to the jury. Our exhibits, the defendants' exhibits are numbered 1 through 135.

> THE COURT: Well, as far as I'm concerned . . . everything here that was admitted gets to go to the jury. It's properly admitted. They get to have it. Whether they want to look at it is another matter, but I want to make it available to them. . . .

N.T., March 1–2, 2011, at 3389–3390.

jury rendered its verdict in reliance on that forged evidence.

*This Court did not just have the power to declare a mistrial to prevent the possibility of a verdict tainted by the forged evidence; it had an obligation to do so.*

The authority of a Court to set aside a judgment or decision obtained by fraud, as established in ... *Harper,* certainly extends to when a court is confronted with fraud that has not yet affected a verdict or decision. Declaring a mistrial avoided the possibility of a verdict tainted by the forged evidence.

Trial Court Opinion, 4/5/2011, at 12–14 (emphasis in original).

■■■ In this appeal, Orie maintains that the trial court lacked the manifest necessity to declare a mistrial during jury deliberations. In support of her position, Orie argues (1) the trial court's decision cannot be supported by legal authority, (2) the trial court improperly substituted itself as fact finder in this jury trial, (3) the trial judge failed to consider available, less drastic alternatives, (4) the Commonwealth failed to exercise reasonable diligence in ascertaining that the documents were forgeries, and (5) the documents at issue were completely immaterial to the case.[12]

■■■ These arguments present no basis upon which to grant relief. Orie's argument that the court lacked legal authority to declare a mistrial fails, based upon the legal authority correctly cited by the trial court in support of its decision: *Commonwealth v. Harper,* 890 A.2d 1078, 1082 (Pa.Super.2006) ("courts simply will not countenance fraud, and when a decision is obtained through its use, the court retains the inherent power to rescind that decision"). *See also* Trial Court Opinion, *supra,* at 12–13, *citing Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) (reversing a 12 year judgment that had clearly been obtained through fraud). Once the trial judge realized forged documents had been admitted into evidence, he could **not** allow those documents to enter into the jury's deliberation and verdict.

■■■ Moreover, the court did not err in making the initial factual determination that the documents were forgeries. As the court cogently explained:

The jury was not presented with the evidence necessary for it to determine if the documents were forged. Although the defects in the signature on Exhibit 101–B were brought out in cross examination, the clear forgery of the other document was not before the jury as it was not discovered by the Commonwealth until after the jury received the case. To suggest that the jury would have been able to "... determine whether any defense documents had been 'forged' or 'fabricated' and, if so, what the ramifications should be for the overall case and, ultimately, the verdict ..." ignores the fact that the jury was never instructed on what those ramifications could be. They were never instructed that if they concluded that certain documents offered by the defense were forgeries, they could consider that as evidence of guilty knowledge. More importantly, because the defense held these documents "close to the vest," fig-

12. In addition, Orie claims that a Secret Service Report issued after the Commonwealth submitted defense exhibits to the United States Secret Service for ink-dating testing "forensically exonerated" her. Orie's Brief at 30. However, since the court decided the motion to dismiss on April 4, 2011, based on a record that did not include the Secret Service Reports of April 28, 2011 and June 8, 2011, and June 10, 2011, this argument may be summarily dismissed.

uratively and literally, not providing the Commonwealth with the opportunity to inspect them until the very end of the trial, the Commonwealth was left without the opportunity to present evidence to the jury that would have aided it in making a determination regarding the documents.

The question of whether the documents were forged was a factual question that this Court had to decide. If the Court determined that the evidence did not establish that the documents were altered or that the evidence was inconclusive, no further action would have been required or taken.

Trial Court Opinion, 4/5/2011, at 14–15.

Further, it is evident that the trial court considered all possible alternatives, including the remedies suggested by the parties.[13] Although Orie argues in her brief that the court could have given an unspecified special cautionary/limiting instruction, sealed the verdict, or ordered a continu-

ance, Orie did not suggest these options to the court when the court asked for suggestions to address the fraud; these options are offered only in hindsight. Even if offered at trial, none of these now suggested remedies would have obviated the fraud.

In addition, no fault can be placed on the Commonwealth for not confirming that the documents had been altered until after the commencement of jury deliberations, since the defense refused to provide those documents until February 28, 2011, the penultimate day of trial.[14] Lastly, contrary to Orie's argument, the documents were not "immaterial," as the documents were used to attack the credibility of the Commonwealth's crucial witness, Pavlot, and were introduced and admitted in the defense case-in-chief to support Orie's defense that Pavlot had the complete authority to direct the staffers and that Pavlot acted on her own initiative and against Orie's directives that no improper political activity occur in the office.[15]

13. The trial court asked the parties twice on March 3, 2011, what remedies they would suggest in light of the revelation of the forged documents. The Commonwealth responded by suggesting the court instruct the jury of the fact of the forged documents and allow the jury to determine the significance. N.T., 3/3/2011 at 17–18. Counsel for Orie responded: "Before you do that then declare a mistrial." *Id.* at 18. In further discussion, the Commonwealth repeated its suggestion that the Court call the jury's attention to the forged documents and have the jury decide the significance—either "no consequence" or "evidence of guilty knowledge." *Id.* at 29. Orie's counsel requested the judge to do nothing and allow the jury "to render its verdict based solely on the evidence presented[,]" and stated, "[w]e are opposed to a mistrial, which is the only other option that we have got." *Id.* at 33.

14. At the side bar during Pavlot's cross-examination, the following exchange occurred concerning the documents used by the defense

during cross-examination, including the documents later determined to be altered:

[ASSISTANT DISTRICT ATTORNEY]: After the [c]ourt leaves, I could see if maybe we can get copies and we would be further along, at least having to show them to us, too.
THE COURT: What is that?
[ASSISTANT DISTRICT ATTORNEY]: Can we see what those are?
[ORIE'S ATTORNEY]: **No.**
[ASSISTANT DISTRICT ATTORNEY]: That's all right. That is fine.
N.T., 2/23/2011 at 2238–2239 (emphasis supplied). The trial court noted in its opinion regarding the motion to dismiss that "[e]ven after [the documents] were shown to Ms. Pavlot, the defense still did not provide copies to the Commonwealth. These three documents [Exhibits 101–A, 101–B and 110] were among the fifty (50) documents that the defense did not turn over to the Commonwealth until they were admitted by the defense after [Orie] identified and authenticated them." Trial Court Opinion, 4/5/2011, at 6.

Here, the admission of the forged documents into evidence was not only a fraud upon the court, but also undermined the jury's fact finding function, and we agree with Judge Manning there was no other adequate method, except a mistrial, to cure the harm. During discussion of possible remedies, when the trial judge told counsel he would have to inform the jury of the forgeries, the defense itself responded that the court should instead declare a mistrial. *See* Footnote 13, *supra.* Furthermore, defense counsel's suggestion to the court that it do nothing and allow the jury to continue deliberation on the evidence presented was, in fact, no remedy, and was properly found to be unacceptable by the trial court. *See id.*

In sum, it was incumbent upon the court to protect and uphold the integrity of the judicial process, and there clearly was "manifest necessity" to declare a mistrial in this case. Accordingly, Orie's double jeopardy challenge fails.

## II. *TESTIMONY OF STEPHEN MacNETT*

■■■■ Orie challenges the decision of the trial court to preclude the testimony of Stephen MacNett, chief counsel to the Senate Republican Caucus, who testified at Orie's first trial.

■■■■ In reviewing this claim, we note that

[t]he trial court may exercise its discretion in deciding whether to admit evidence, and our review of the trial court's evidentiary decisions is limited to determining whether the trial court abused

its discretion. The trial court abuse[s] its discretion only if the court's ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Foley,* 38 A.3d 882, 886 (Pa.Super.2012), *appeal denied,* 619 Pa. 671, 60 A.3d 535 (2013) (quotations and citations omitted).

Orie argues that the exclusion of MacNett's testimony from her second trial "essentially provided the prosecution with a 'do-over' without the burden of the defense's most compelling testimony, which was both necessary to rebut prosecution testimony, and central to the defense's theory of the case." Orie's Brief at 32.

Orie argues her defense "acknowledged campaign work being done during the legislative day by staffers, and acknowledged some of it was done in the legislative office but stressed that it was lawful for staffers to do so on vacation time, personal [time], or with accumulated compensatory time." *Id.* (emphasis omitted). Orie claims MacNett's testimony was necessary to refute the Commonwealth's testimony, presented through Russell Faber, Chief Clerk of the Pennsylvania Senate, who testified:

> Q: Sir, if a person, let's say, the Senator, wanted to have people come in on a day off, clearly they have no reason to be there for state business, but they nonetheless want to come in and do political campaign work or fundraising work for that Senator in those premises is that allowable?
>
> A: No.

N.T., 3/8/2012, at 1716.[16] Orie contends MacNett would have testified that Senate

---

**15.** As the trial court explained: "The forged documents, and others that were introduced by [Orie], were offered to disprove the Commonwealth's main contention: that [Orie] directed her employees to engage in illegal political activity." *Id.* at 20.

**16.** This testimony was objected to by Orie's counsel, and the trial court overruled the objection. *See* N.T., 3/8/2012 at 1715–1716.

policy did not preclude staffers from doing campaign work in the legislative office using their accumulated compensatory time ("comp time").[17] We conclude no relief is due on this claim.

Contrary to Orie's argument, we find that Orie's defense was **not** that she believed comp time political activity done in the legislative office was lawful. Rather, Orie's defense was that she knew it was illegal for campaign work to be conducted in the legislative office, and she repeatedly gave directives to Pavlot to reinforce this prohibition.[18] Orie maintained that Pavlot disregarded her directives.[19] Therefore, MacNett's proposed testimony, regarding the absence of any Senate rule that precluded doing campaign work in the legislative office on comp time, was irrelevant, and the court's ruling precluding his testimony was not an abuse of discretion.

### III. *SUPPRESSION*

Orie contends that the trial court erred in denying her suppression motion. Orie summarizes her argument as follows:

> The Commonwealth in this case applied for, was granted, and executed approximately twenty (20) search warrants on former Senator Orie's offices, staffers, computers, cell phone, and email account, seizing their contents prior to the first trial. These search warrants essentially allowed the District Attorney to go on a fishing expedition of items and information, most of which was constitutionally protected, privileged, or otherwise irrelevant. The search warrants were so generally investigatory or overbroad, and the District Attorney's execution of those warrants so overseizing, that they violated Ms. Orie's right to privacy under the United States and Pennsylvania Constitutions, and violated

---

**17.** Both Farber and MacNett testified at Orie's first trial. At Orie's first trial, MacNett had testified:

> [By Orie's Counsel]:
> Q. Now, directing your attention to the Senate rules themselves and only to the Senate rules my question to you is: Up until this resolution was passed in 2010 after the time that she was indicted was there anything in the Senate rules which precluded doing campaign work on comp time?
> A. There was not.
> Q. Was there anything in the Senate rules which precluded doing campaign work on comp time within a legislative office?
> A. Again, there were no set of rules that encumbered that.
> Q. Therefore, under the Senate rules to do campaign work within a Senate office during the legislative day, assuming that you had comp time coming, would have been permissible?
> A. There was absolutely nothing that existed that I had in the Senate rules that prohibited that.
> N.T., 2/25/2011, at 2555–2556.

**18.** During cross-examination, Pavlot was questioned and denied having seen numerous, hand written directives from Orie, concerning campaign work to be done "at home," "outside of the office[, u]se campaign office or your home, or do on your lunch hour," and "comply with Ethics Law, no exceptions." N.T., 3/2/2012 at 621–622, 632. *See also id.* at 619–633. Pavlot was also questioned by Orie's counsel regarding Orie's email to another individual, Nick Havens, that stated "One cannot do political from Senate." *Id.* at 634.

**19.** In closing arguments, Orie's counsel argued that when Orie was not present her staffers did not comply with Orie's directives:

> Why go upstairs when the Senator isn't around? I mean, it is a flight of stairs. Why walk across the street when all you have to do is sit in the air conditioned more highly equipped senatorial office to make phone calls.
> That is what they were doing. They weren't supposed to be. The Senator was pretty clear. I can tell you that they never did that when she was around. . . .

the Speech or Debate clauses of both the federal and Pennsylvania Constitutions. Additionally, the warrants violated numerous confidentiality privileges including constituent privilege, attorney-client privilege and the deliberative process privilege. The "prosecutorial taint team" arguably put into place by the District Attorney to protect against violations of the constitution or other privileges, was both procedurally defective and insufficient to overcome the deficiencies and abuses which irretrievably corrupted the searches and seizures in this case.

Orie's Brief at 37–38.[20]

■■■ In reviewing the trial court's suppression ruling, we are guided by the following principles:

"The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." When reviewing the rulings of a suppression court, this Court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Johnson,* 33 A.3d 122, 125–126 (Pa.Super.2011) (citations and footnote omitted), *appeal denied,* 616 Pa. 634, 47 A.3d 845 (2012).

### Article I, Section 8 of the Pennsylvania Constitution

■■■ Orie first contends the search warrants issued in this case were general and overbroad. Article I, Section 8 of the Pennsylvania Constitution provides, in pertinent part: "[N]o warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause...."[21] Pa. Const. Art. I § 8. This Court has explained:

It is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched.... The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general "rummaging" banned by the [F]ourth [A]mendment. A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will

N.T., 3/22/2012, at 3917–3918.

20. In connection with her suppression argument, Orie complains that the server that was removed from her legislative office has not been returned to her. The server was removed from Orie's office because it could not be copied without a password, which was not supplied when the search warrant was executed. *See* N.T., 12/13/2010, at 20. Orie admits that "[t]he Senate Republican Caucus has sought, repeatedly and unsuccessfully, the

return of **their** electronic property since December of 2009." Orie's Reply Brief at 8 (emphasis supplied). In the view of this Court, the issue of return of the hard drive is a Caucus issue.

21. Under the Fourth Amendment to the United States Constitution, "no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched and the person or things to be seized." U.S. Const. Amend. IV.

prove unrelated to the crime under investigation ... An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

* * *

The language of the Pennsylvania Constitution requires that a warrant describe the items to be seized "as nearly as may be...." The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible. This requirement is more stringent than that of the Fourth Amendment, which merely requires particularity in the description. The Pennsylvania Constitution further requires the description to be as particular as is reasonably possible.... Consequently, in any assessment of the validity of the description contained in a warrant, a court must initially determine for what items probable cause existed. The sufficiency of the description must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible.

*Commonwealth v. Rivera,* 816 A.2d 282, 290–291 (Pa.Super.2003) (citations omitted), *appeal denied,* 573 Pa. 715, 828 A.2d 350 (2003). Because the particularity requirement in Article I, Section 8 is more stringent than in the Fourth Amendment, if the warrant is satisfactory under the Pennsylvania Constitution it will also be satisfactory under the federal Constitution.

██ Furthermore, the Pennsylvania Supreme Court has instructed that search warrants should "be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." *Commonwealth v. Rega,* 593 Pa. 659, 933 A.2d 997, 1012 (2007) (citation omitted), *cert. denied,* 552 U.S. 1316, 128 S.Ct. 1879, 170 L.Ed.2d 755 (2008).

Orie focuses her challenge on the search warrants related to a flash drive provided by Orie to employee, Joshua Dott; Orie's district office; an Acer laptop computer provided by Orie to Dott; Orie's personal email account, and the order for Orie's cell phone records. *See* Orie's Brief at 48–49.[22] Specifically, these warrants are the November 25, 2009, warrant (flash drive), the December 11, 2009 warrant (Orie's district office), the January 5, 2010 warrant (Acer laptop computer), the January 8, 2010 warrant (AOL accountJaneorie@aol.com), and the March 1, 2010 order for records of Orie's personal cellular phone. Our review leads us to conclude that suppression of the evidence was not warranted on the basis of Article I, Section 8 of the Pennsylvania Constitution. For purposes of this discussion, we will address not only each of the challenged warrants, but also related warrants that followed the search warrants at issue herein. In addition, it should be pointed out, preliminarily, that on December 29, 2009, a Special Master

---

**22.** Orie fails to separately address each of the search warrants that she challenges, and we note the Commonwealth's position that she has arguably waived this argument. *See* Commonwealth's Brief at 48. Herein, we limit our discussion to the argument as presented in Orie's brief, *supra.* In this regard, we do not address the warrants relating to a recordable compact disc in the possession of Christa Meeder. *See* Omnibus Pretrial Motion Appendix, Exhibits J and K. We note that although this January 22, 2010 warrant is listed as Exhibit K, it is actually found at the "C" tab.

was appointed by the Honorable John A. Zottola, the Supervising Judge of the Grand Jury, to review the seized material for any privilege so that the Commonwealth had access only to non-privileged documents.[23] We proceed, then, to an examination of the warrants and accompanying affidavits.

*November 25, 2009 Search Warrant*

The November 25, 2009 warrant for the flash drive, in the possession of Joshua Dott, an employee of Orie, identified the item to be searched and seized as Dott's "PNY USB 2GB flash drive, black in color AND any contents contained therein, including all documents, images, recordings, spreadsheets or any other data stored in digital format."[24] The accompanying affidavit related the details of the affiant's investigation following Orie's intern's resignation and complaint to the Allegheny County District Attorney's Office on October 30, 2009, including information received from the intern, and details of the affiant's interviews with another student staffer, and Dott. The affiant related that on Sunday, November 1, 2009, detectives witnessed Orie's Chief of Staff, Jamie Pavlot, and Dott carry a cardboard box and a postal bin out of the building housing Orie's district office, and load them into Pavlot's vehicle. Dott told the affiant he had observed staff members engage in political campaigning for Pennsylvania Supreme Court Justice candidate, Joan Orie Melvin, in Orie's office in 2009, and had participated in these activities himself. He indicated that he had "scann[ed] or cop[ied campaign contribution] checks and enter[ed] the check information on a spreadsheet to a USB flash drive (black PNY 2gb with 'Polaroid' in white letters) provided by [Orie]."[25] Dott told the affiant the day after the intern resigned, he was notified that his "comp time" would be debited for campaign activities he had performed on behalf of Orie Melvin. He also stated the Sunday after the intern resigned, Pavlot called him to come to the office to help with a rebuttal letter Orie wanted to send to the intern, and he was also asked to assist Pavlot in carrying out

---

23. The Special Master appointed was Duquesne Law Professor Bruce Antkowiak. *See* Trial Court Opinion, 2/4/2011, at 8 n. 7.

At the suppression hearing, the role of the Special Master was described by Detective Lyle Graber, of the Allegheny County Office of the District Attorney:

The master was appointed by Judge Zottola. His role in analyzing or reviewing this material was that the raw data and evidence that had been seized by our office was either delivered under seal directly by us or if need be through Trooper Scoot Luca of the Pennsylvania State Police who had been designated by Judge Zottola and authorized to be part of this process.

In terms of data that might not have gone through the trooper, in terms of perhaps boxes of paper documents, like the ones that were seen being taken out of the office in early November, they were delivered directly by us to the special master. The special master reviewed them and did what he had to do, contacted us, and I went to his office and obtained sealed boxes that he directed me to take to Judge Zottola, which I did.

Judge Zottola would review documentation also under seal that had been prepared by the special master and then would direct me according to, I assume, either his reading of those directions or on his own as a result of those directions and then we were able to either look at a portion of the contents or we were directed to in terms of computer information sometimes to deliver it under seal to Trooper Lucas who would redact whatever had been instructed by either the special master or Judge Zottola, and Trooper Lucas would then provide us with a redacted viewable version of those drives in terms of computer information. N.T., 12/13/2010, at 77–78.

24. Omnibus Pretrial Motion Appendix, Exhibit A.

25. *Id.*, Affidavit, p. 5.

boxes of unknown contents, and placing them in Pavlot's vehicle. He told the affiant he was still in possession of the flash drive he used to document the list of Joan Orie Melvin donors at the direction of Orie and Orie's Chief of Staff, Jamie Pavlot, and the records in the donor list were still maintained within the USB flash drive.[26]

### December 11, 2009 Search Warrant

The December 11, 2009 search warrant for Orie's district office identified the items to be seized and searched as "all computer hardware"; "software"; "documentation" to access the computer systems and passwords; and electronically stored data referencing: Joan Orie Melvin or her 2009 political campaign, and checks, campaign contributions, thank you letters, and masthead for Joan Orie Melvin's 2009 political campaign, and Orie's 2001–2009 elections or political campaigns, and checks, campaign contributions, thank you letters, and masthead for Orie's 2001 through present political campaigns.[27] The accompanying 13–page affidavit of probable cause detailed the results of the Commonwealth's investigation and described interviews with numerous employees of Orie, including Dott, Audrey Rasmussen, and Pavlot, who each described political campaign-related activities conducted in the office. Pavlot stated she had done campaign work on legislative time for Orie since 2001, as well as campaign work for Orie's sister, Joan Orie Melvin, in 2009, and she described those duties. Pavlot and other staffers

indicated that legislative computers and other office equipment were used for campaign-related purposes.

### January 5, 2010 Search Warrant

The January 5, 2010 search warrant identified the item to be searched and seized as "Acer Aspire Model 6930 laptop computer and the hard drive contents contained therein" in the possession of "Joshua Dott."[28] The supporting affidavit recounted the facts of the continuing investigation, including an interview with Dott, who stated he was instructed to use an Acer Aspire Model 6930 laptop computer or a black PNY 2gb USB flash drive to enter information into a spreadsheet concerning campaign contribution checks for Joan Orie Melvin, and that both items were provided to him by Orie "for that specific purpose."[29] Dott indicated the political and campaign-related activities were often conducted during business hours. Dott further indicated to the affiant that he was made aware prior to his employment at Orie's office, that another staffer, Audrey Rasmussen had entered similar data on the same laptop computer for Orie's previous political campaigns. Dott stated that since coming into his possession the item "had only been used under the direction of Senator Orie for campaign-related functions."[30]

### January 8, 2010 Search Warrant

The January 8, 2010 warrant for Orie's AOL[31] account Janeorie@aol.com[32]

---

**26.** *See id.* at 6.

**27.** Omnibus Pretrial Motion Appendix, Exhibit D. The warrant also identified the following items to be searched for and seized: magnetic campaign signs for Orie or Joan Orie Melvin; a political banner; keys to a P.O. box and to another suite of offices in the same building; telephone log books from 2001 to the date of execution and photographs of the offices and the other suite. *See id.*

**28.** Omnibus Pretrial Motion Appendix, Exhibit F.

**29.** *Id.,* at Affidavit, p. 6.

**30.** *Id.,* at 11.

**31.** America On Line.

**32.** Omnibus Pretrial Motion Appendix, Exhibit H.

sought, *inter alia,* "all stored communications and other files ... between August 1, 2009 and the present," and was directed to the custodian of records at AOL. The attached affidavit of probable cause indicated that Orie's staffers had stated the email account had been used by Orie to send messages concerning campaign-related activities that they were to perform. In this regard, the affidavit specifically referenced an email thread initiated on October 29, 2009, from Orie's personal email to Dott and others. The affidavit also included Rasmussen's statements regarding receiving campaign-related emails from Orie's personal email, which were forwarded emails with the term "FR" to indicate the forwarded contact information should be added by Rasmussen to the data base. Rasmussen stated that the "FR" in these emails referred to Fund Raiser.

### January 22, 2010 Search Warrant

The November 25, 2009 search warrant for the flash drive was followed by a January 22, 2010, search warrant for the flash drive,[33] which sought databases and/or spreadsheets containing donation/contribution lists for Orie and Joan Orie Melvin, letterhead and/or masthead, thank you letters, and host committee lists. The accompanying affidavit set forth additional information, including information from the affiant's interview with Pavlot, who described campaign work she and others performed in the legislative office for Orie from 2001, and for Joan Orie Melvin in 2009. Further, the affidavit contained further information Dott had provided to the

affiant on January 19, 2010, concerning the types of files that would be present on the flash drive, specifically: "Donations to Judge Joan Orie Melvin (with corresponding check numbers)[;] Donation lists for Senator Jane Orie[;] Donation list for Judge Joan Orie Melvin[;] Host Committee lists[;] Judge Joan Orie Melvin's letterhead[;] Judge Joan Orie Melvin['s] handout layout[;] various thank you notes[; and] Senator Jane Orie's campaign letterhead[.]"[34]

### August 9, 2010 Search Warrant

The December 11, 2009 warrant for Orie's district office was followed by an August 9, 2010 search warrant for the computer hard drives,[35] which identified the items to be searched and seized as:

1. [A]ny Microsoft Outlook calendar data[;]
2. Microsoft Excel spreadsheets associated with the documentation of compensatory time accrual and usage by Orie staff members and which are believed to contain or illustrate evidence of political or campaign-related activities which occurred within the offices of Senator Jane Orie[;]
3. [A]ny documents containing the keywords or phrases from the attached list.

The affidavit in support of the warrant averred the details of the ongoing investigation, including campaign-related documents and files revealed by the search of the redacted information from the flash drive and compact disc,[36] and listed 54 words or phrases that had been found

---

**33.** Omnibus Pretrial Motion Appendix, Exhibit C, at 21. We note that although this January 22, 2010 Warrant is listed in the Appendix as Exhibit "C", it is found at the "K" tab.

**34.** *See id.,* at Affidavit, pp. 21–22.

**35.** Omnibus Pretrial Motion Appendix, Exhibit E.

**36.** As we noted earlier, the search warrants for the recordable compact disc from Christa Meeder are not discussed herein since Orie's brief does not specifically challenge those warrants. *See* Footnote 22, *supra.*

within those documents, and believed to be on the hard drives.

### August 19, 2010 Search Warrant

The January 5, 2010 warrant for the laptop computer, was followed by an August 19, 2010 search warrant for the contents of the laptop computer,[37] which identified the items to be searched for and seized as computer files, documents, or spreadsheets containing certain listed verbiage. The accompanying affidavit stated that Dott had detailed his use of the laptop computer to enter campaign-related check information on a spreadsheet, and related that he was made aware prior to his employment at Orie's office that another staffer had entered similar data on the same laptop computer for previous campaigns. The affidavit set forth a list of words or phrases compiled from campaign-related documents and files revealed by the search of the flash drive.

### March 10, 2010 Search Warrant

The January 8, 2010 warrant for Orie's AOL accountJaneorie@aol.com,[38] was followed by a March 10, 2010 search warrant, which identified the items to be searched and seized within the email account as "email content regarding: illegal political campaigning and/or fundraising by Jane Orie, Joan Orie Melvin and/or staff or supporters, information regarding the ongoing criminal investigation, any attempts to thwart or circumvent [the] investigation," [39] and emails referencing a specified term. The affidavit provided the same details as the affidavit accompanying the search warrant for the email account, with further elaboration of the ongoing investigation.

Significantly, the officers testifying at the suppression hearing explained that after the initial search warrants were executed, the items taken pursuant to those search warrants were held without being viewed until law enforcement officials obtained separate search warrants for the data contained within those items. After the search warrant for the flash drive was executed, the flash drive was signed into evidence, and the data on the flash drive was not viewed until after a second warrant and review by the Special Master. *See* N.T., 12/13/2010, at 69–71, 74. *See also id.* at 87–88, 118. Upon execution of the search warrant at Orie's office, the computer hard drives were taken only after copies were made to replace the originals, and the hard drives were placed in custody with the county detective's office until a subsequent warrant was issued and the information was provided first to the Special Master. *Id.* at 34, 36, 38, 267–272. The server in Orie's office could not be copied absent a password that was not provided, so it was seized and taken to the state police barracks and was not viewed initially. *Id.* at 20, 38, 40. Likewise, the data contained within the laptop computer was not accessed until a later warrant was obtained. *Id.* at 118. The same procedure was followed with respect to the email account. *Id.* at 162–164, 168–169. Furthermore, as already mentioned, before being viewed, all material was turned over to a Special Master to cull out any privileged material. *Id.* at 77–78.

In reviewing the challenged warrants [40] —the November 25, 2009 search warrant

---

37. Omnibus Pretrial Motion Appendix, Exhibit G.

38. Omnibus Pretrial Motion Appendix, Exhibit I.

39. *Id.*

40. It bears mention that neither the Commonwealth nor the trial judge discussed the question of whether Orie had a reasonable expectation of privacy with regard to the items that were searched for and seized by the search warrants.

for the flash drive, the December 11, 2009 search warrant for Orie's district office,[41] the January 5, 2010 search warrant for the Acer laptop computer, and the January 8, 2010 search warrant for the AOL account—we are satisfied that the December 11, 2009 warrant for Orie's district office is valid under Article I, Section 8, of the Pennsylvania Constitution. Likewise, we conclude the January 5, 2010 warrant for the Acer laptop computer is neither general or overbroad, and is valid under the Pennsylvania Constitution.

 On the other hand, we find the November 25, 2009 warrant for the USB flash drive, while supported by probable cause to believe the flash drive contained evidence of criminal activity, was overbroad, in that the warrant sought "any contents contained therein, including all documents, images, recordings, spreadsheets or any other data stored in digital format" without limitation to account for any non-criminal use of the flash drive. Here, the attached affidavit simply recited Dott's current use of the flash drive for Orie Melvin's campaign-related donor lists, without more. However, this case involves **unique facts** that must be considered in our analysis. Given the distinctive nature of a USB flash drive, like other types of digital storage systems (*e.g.*, a computer hard drive), it must be *seized* in its entirety first and then *searched* at a later time

(typically by someone with an expertise in this area). Moreover, in this case a search of the contents of the USB drive was **never** conducted pursuant to November 25, 2009 warrant, but rather only in accordance with the second, more detailed January 22, 2010 warrant that provided the particularity that the earlier warrant lacked. Law enforcement seized the flash drive pursuant to the first warrant and searched its contents pursuant to the second warrant. As a result, under the unique facts of this case, we find no constitutional violation.[42] *See generally, Commonwealth v. Johnson*, 68 A.3d 930 (Pa.Super.2013) (police lawfully secured premises pending a search warrant). Furthermore, the information obtained pursuant to the second warrant was delivered to the Special Master for review. Therefore, we conclude no relief is due with respect to Orie's challenge to the flash drive warrants.

 Likewise, we find the January 8, 2010 warrant for Orie's AOL account Janeorie@aol.com, seeking, *inter alia*, "all stored communications and other files ... between August 1, 2009 and the present, including all documents, images, recordings spreadsheets or any other data stored in digital format," was overbroad. The affidavit attached to the January 8, 2010 search warrant provided probable cause that evidence of criminal activity could be

---

41. It should be noted that when the December 11, 2009 search warrant was executed, Orie's personal office was not searched and the computer located in that personal office was not seized. N.T., 12/13/2010, at 86–87, 129. *See* Trial Court Opinion, 2/4/2011, at 11 (Finding of Fact, No. 15).

42. In so ruling, we do not imply that two warrants are required to seize and search the contents of computer hard drives, flash drives and other digital storage devices, or that the Commonwealth's decision in this case to obtain two warrants is the preferred approach

with respect to such searches and seizures. To the contrary, the necessary specificity regarding the items to be seized and the files to be searched should all be set forth in an initial warrant (such that a second warrant is unnecessary). In other words, in the absence of exigent circumstances, the seizure and search of digital storage devices should be conducted in accordance with the limitations set forth in a single warrant, with those limitations based upon the extent of probable cause established in the accompanying affidavit.

found therein, and was limited to the period from August 2009 to January 10, 2010, but did not justify the search of all communications for that period. However, as with the warrants for the USB flash drive, law enforcement did not conduct a search pursuant to the January 8, 2010 warrant, but rather only seized the entirety of the evidence for a later search of the contents. The search of the seized information in the AOL account was conducted pursuant to the second, more detailed, March 10, 2010 warrant that provided the particularity the earlier warrant lacked. Given these unique facts, we similarly find no violation of Orie's constitutional rights.[43] We again note that the evidence obtained through the search conducted pursuant to the second warrant was reviewed by the Special Master before any information was turned over to the prosecutors for review.

Orie, in claiming that these search warrants were defective, relies heavily on *United States v. Wecht,* 619 F.Supp.2d 213 (W.D.Pa.2009). According to Orie, the warrants in this case are nearly identical to those declared general and overbroad in *Wecht,* a case involving a prosecution against the county coroner for, *inter alia,* using public resources to conduct a private pathology business on the side. The federal district court found overbroad a warrant authorizing the seizure of a laptop computer in the hands of a third party because it permitted the seizure of the laptop and "all information and data contained therein, including data stored on any associated data storage devices such

as zip drives, discs (of any kind including cd and hard), and back-up tapes." *Id.* at 240. The district court ruled that this description was problematic "not so much for its ambiguity as for its breadth," and was overbroad because it allowed the seizure of every file on the laptop without any limitation to those files for which the supporting affidavit established probable cause. *Id.* at 243–44. The district court rejected the government's contention that the affidavit established that probable cause was coextensive with all of the laptop's contents, noting that "the affidavit did not provide sufficient information to justify a reasonable inference that *all* of the data on the laptop computer would likely be probative of the crimes under investigation." *Id.* at 244 (emphasis in original).

This Court is not bound by the federal district court's decision in *Wecht,* and furthermore we find that it is clearly distinguishable from the case presently before us. In *Wecht,* the government not only seized the laptop computer itself but also searched its contents *pursuant to the same overbroad warrant.* As explained above, in this case although some digital evidence was *seized* pursuant upon overbroad warrants (*i.e.,* the November 25, 2009 warrant for a USB flash drive and the January 8, 2010 warrant for Orie's personal AOL account), the contents of this seized evidence was not *searched* until after the issuance of subsequent warrants that described with particularity the specific files that could be

---

**43.** We note the law for search and seizure of digital evidence has yet to develop from the traditional rules that are based upon physical evidence. *See* Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* vol. 2, § 4.6(d), 638 (4th ed. West 2004) ("[M]uch is to be said in favor of resort to special procedures designed to minimize the privacy intrusion, especially when the resulting search will extend to computer data.");

Orin S. Kerr, *Search Warrants in the Era of Digital Evidence,* 75 Miss.L.J. 85, 92–97 (2005) (illustrating differences between warrants for physical evidence and digital evidence with comparison of breaking into a home with locksmith tools to steal valuables and breaking into a home computer by computer-hacking to steal credit card information).

searched and seized (for which probable cause unquestionably existed). The *Wecht* case involved no subsequent clarifying warrants, and thus Orie's reliance on that case is unavailing.[44]

In sum, having reviewed and considered the initial warrants with incorporated affidavits, the second warrants and accompanying affidavits, the record of the suppression hearing, and the use of the Special Master, we discern no justifiable reason to reverse the court's trial decision that rejected Orie's argument that under Article I, Section 8 of the Pennsylvania Constitution the warrants were invalid.

■■■ Finally, we address the March 1, 2010, application and order for disclosure of Orie's cell phone records from July 1, 2009 to December 31, 2009,[45] which is governed by Section 5743 of the Crimes Code, which provides, in pertinent part:

*Requirements for court order.*—A court order for disclosure under subsection (b) or (c) shall be issued only if the investigative or law enforcement officer shows that there are specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are

relevant and material to an ongoing criminal investigation....

18 Pa.C.S. § 5743(d). The affidavit attached to the application for disclosure reiterated the facts set out in the previous affidavits accompanying the warrant applications. Specifically, the affidavit stated that Pavlot had received campaign-related text messages from Orie's cellular phone, and text messages with directives regarding staffers' future actions following the intern's allegations. Our review confirms that the application and affidavit of probable cause warranted a reasonable belief that the records would be relevant and material to the ongoing criminal investigation. Therefore, we agree with the trial court that the application was properly granted. *See* Trial Court Opinion, 2/4/2011, at 15–16, 28–29 (Findings of Fact, No. 25; Conclusions of Law, Nos. 17–18).

In conclusion, Orie's challenge to the search warrants and order for cellular phone records fails to warrant relief.

### Taint Team

Nor do we find merit in Orie's complaint that a "prosecutorial taint team" that was mentioned in the December 11, 2009 warrant was "procedurally defective" and therefore warranted suppression.[46] Orie's

---

44. Orie also contends that the search warrants "violated the parameters established by the courts such as the *CDT* [*United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989, 1005 (9th Cir.2009)] Court." Orie's Brief at 48. However, that decision, dealing with the issue of warrants for computer equipment and electronic data, was revised and superseded in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir.2010), and the criteria relied upon by Orie are now contained in Chief Judge Kozinski's concurrence.

45. Omnibus Pretrial Motion Appendix, Exhibit M.

46. The "taint team" was mentioned in the December 11, 2009 search warrant, authoriz-

ing the search of Orie's district office, and this warrant was executed on December 11, 2009. The warrant indicated "the items to be searched for and seized will be initially preserved and reviewed by a prosecutorial 'taint team' prior to dissemination to investigators as outlined within the affidavit of probable cause[.]" Omnibus Pretrial Motion Appendix, Exhibit D, at Attachment, p. 2. The accompanying affidavit of probable cause described the "taint team" as follows:

[B]ecause of the potential of legislative-privileged material being comingled within the computer hard drives and/or related hardware, this evidence will be sealed by law enforcement officials as soon as possible and prior to viewing the contents. Computer crimes experts will then, consistent

Brief at 38. Orie claims that that the prosecutorial taint team voided the warrants *ab initio*. However, the "taint team," referenced in the December 11, 2009 warrant—and described in the accompanying affidavit—was **never utilized** because Orie's then attorney raised an objection to that process. On December 29, 2009, the Honorable John A. Zottola, who was the Acting Supervising Judge of the Investigative Grand Jury, appointed a Special Master to review all seized information.

**All of the evidence was reviewed by the Special Master and Judge Zottola** before any document was turned over to the District Attorney's Office. *See* Trial Court Opinion, 2/4/2011, at 7 (Finding of Fact, No. 12); N.T., 12/13/2010, at 77–78.[47] As the trial court concluded: "[A] Special Master was appointed to address questions of legislative and other privilege. [Orie] did not establish that the use of a special master in any way interfered with any right or privilege she enjoys." Trial Court Opinion, 2/4/2011, at 31 (Conclusion of Law, No. 24). Based on our review and the court's sound reasoning, we reject Orie's argument that the evidence should have been suppressed because the "taint team" was "procedurally defective."

with their policies and procedures, create forensic copies of the seized evidence. This process will also be completed without an investigative search of the contents being conducted. A prosecutorial "taint team" will then be assembled to review the contents of this seized material. This "taint team" will consist of prosecutors and/or investigators not involved with this criminal investigation, who will review the contents of the evidence to identify any privileged contents that should not be viewed by those investigators involved in this investigation. If, after determining that any portion of the evidence is privileged, the "taint team" will then prevent this material from being viewed by investigators.

*Privilege*

■ Finally, we address Orie's arguments that suppression was warranted based on privilege. Specifically, Orie relies on the Speech or Debate Clause, the deliberative process privilege, attorney-client privilege, and constituent privilege.

■ The Speech or Debate Clause, as set forth in Article II, Section 15 of the Pennsylvania Constitution,[48] is essentially identical to and derived from the federal Speech or Debate Clause (U.S. Constitution Article I, Section 6). *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 368 A.2d 675, 680 (1977). The Clause protects legislators from judicial interference with their legitimate legislative activities, and even where the activity questioned is not literally speech or debate, it is entitled to protection if it falls within the "legitimate legislative sphere"; if it does, the action against the legislator calling it into question, whether criminal or civil, must be dismissed. *Id.* at 680–681. The test for determining what constitutes "legislative activity" consists of two criteria: (1) the act must involve a policy-making decision of a general scope, and (2) the act must be "procedurally" legislative, that is, passed by means of established legislative procedures. *Firetree, Ltd. v.*

Omnibus Pretrial Motion Appendix, Exhibit D, at Affidavit, p. 13.

**47.** *See* n. 23, *supra*.

**48.** Pennsylvania Constitution, Article II, Section 15, provides:

The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.

Pa. Const. Art. II, § 15.

*Fairchild,* 920 A.2d 913, 920 (Pa.Cmwlth. 2007), *appeal denied,* 596 Pa. 748, 946 A.2d 689 (2008). However, the Speech or Debate Clause "does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *United States v. Brewster,* 408 U.S. 501, 528, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) (holding that the Speech or Debate Clause did not immunize a former U.S. Senator from a criminal indictment for bribery). *See, e.g., Hamilton v. Hennessey,* 783 A.2d 852 (Pa. Cmwlth.2001) (Speech or Debate Clause does not preclude discovery regarding whether newsletters were "campaign expenses" under Election Code), *aff'd,* 569 Pa. 101, 800 A.2d 927 (2002).

As already discussed, a Special Master was appointed to screen for any seized documents that were subject to legislative privilege. At the suppression hearing, retired Commonwealth President Judge Joseph T. Doyle testified as an expert for Orie. He reviewed the approximately 4,000 documents seized pursuant to the search warrants that had been determined by the Special Master to be non-legislative, and turned over to the prosecution by Judge Zottola after the Special Master's review. Retired Judge Doyle, now deceased, opined that 58% of the documents he reviewed were legislative; 24% were campaign related, and 18% were "other." *See* Trial Court Opinion, 2/4/2011, at 18 (Findings of Fact, Nos. 31–33); N.T., 12/13/2010, at 424. We agree with the trial court that, given that it was not disputed that a substantial number of documents were not legislative in nature and privileged under the Speech or Debate Clause of the Pennsylvania Constitution, blanket suppression was not warranted. *See* Trial Court Opinion, *supra* at 30 (Conclusion of Law, No. 20).

Furthermore, as the trial court noted, at the pre-trial conference held on January 27, 2011, the Commonwealth agreed that it would only introduce into evidence the documents that both the Special Master and Judge Doyle had determined were non-legislative. *See id.* at 18–19, 29–30 (Finding of Fact, No. 34; Conclusion of Law, No. 20); N.T., 1/27/2011, at 3–4. In addition, the court indicated it would allow Orie to assert the privilege at trial should a dispute arise as to a certain document, and no such document was ever identified at trial. As the United States Supreme Court stated in *Brewster, supra,* "[i]n no case has this Court ever treated the Clause as protecting all conduct *relating* to the legislative process." *Brewster, supra* 408 U.S. at 515, 92 S.Ct. 2531 (emphasis in original) (footnote omitted). Therefore, Orie's reliance on the Speech or Debate Clause fails to warrant relief.

Furthermore, Orie relies on the deliberative process privilege. "The deliberative process privilege permits the government to withhold documents containing confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *Commonwealth ex rel. Unified Judicial System v. Vartan,* 557 Pa. 390, 733 A.2d 1258, 1263 (1999) (*plurality opinion*) (citation and quotations omitted). "The deliberative process privilege benefits the public and not the officials who assert the privilege." *Id.* "The privilege recognizes that if governmental agencies were forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Id.* (citations and quotations omitted)

The deliberative process privilege should be narrowly construed. *Redland Soccer Club, Inc. v. Department of*

*the Army,* 55 F.3d 827 (3d Cir.1995).[49] The initial burden of showing that the privilege applies is on the governmental agency asserting the privilege. *Id.* To meet its burden, the agency must present more than a bare conclusion or statement that the documents sought are privileged. *Id.* Otherwise, the agency, not the court, would have the power to determine the availability of the privilege. *Id.* Here, as Orie has made only a bare assertion that "the Commonwealth has also violated [Orie's] deliberative process privilege in its execution of the above search warrants,"[50] with some citations to the case law regarding the deliberative process privilege, we find no reason to disturb the conclusion of the trial court that suppression was not warranted on this basis. *See In re Lokuta,* 608 Pa. 223, 11 A.3d 427, 436 (2011), *citing Commonwealth v. Walter,* 600 Pa. 392, 966 A.2d 560, 567 (2009) (failure to sufficiently discuss issues will cause them to be waived).

Finally, neither the attorney-client privilege nor "constituent privilege" warrant suppression. Although Orie relies on the attorney-client privilege, she makes only a general assertion that the Commonwealth seized a computer hard drive and related documents from a staff attorney in her office during its execution of the search warrant. *See* Orie's Brief at 57–58. Furthermore, Orie points to no documents that violate **her** attorney-client privilege. In addition, Orie's reliance on a "constituent privilege" is unavailing. The cases cited by Orie in support of her argument—

*Melvin v. Doe,* 48 Pa. D. & C.4th 566, 576 (Allegheny Co.2000) and *Miller v. Transamerican Press, Inc.,* 709 F.2d 524 (9th Cir.1983)—dealt with privilege attendant to the Speech or Debate Clause, which we have addressed above.

In conclusion, having reviewed the arguments of Orie regarding the motion to suppress, we find no basis upon which to disturb the trial court's denial of the motion. Therefore, Orie's challenge to the court's suppression ruling fails.

## IV. & V. *FORGERY CONVICTIONS*

In the fourth and fifth issues raised in this appeal, Orie challenges that the forgery convictions, claiming (1) the evidence is insufficient to sustain the convictions, and (2) the convictions are against the weight of the evidence.[51] We first address Orie's claim "there was insufficient evidence for the jury to conclude beyond a reasonable doubt that [Orie] was responsible for forging the subject documents or knowingly introducing them at the first trial." Orie's Brief at 67.

 Our standard of review is well settled:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence

---

49. We recognize the holdings of federal circuit courts are not binding but may serve as persuasive authority. *Commonwealth v. Haskins,* 60 A.3d 538, 548 n. 9 (Pa.Super.2012), *appeal denied,* — Pa. ——, 78 A.3d 1090 (2013).

50. Orie's Brief at 57.

51. Orie presents both weight and sufficiency arguments in her brief, in separate argument sections. However, her weight and sufficiency arguments are combined in the discussion of the weight of the evidence, and Orie's separate discussion of the sufficiency of the evidence consists of nothing more than a recitation of the standard of review. Nevertheless, we address the issues separately.

and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict."

Our Supreme Court has instructed: [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

In addition, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant."

*Commonwealth v. Williams,* 73 A.3d 609, 617 (Pa.Super.2013) (citations omitted).

As a result of Orie's introduction into evidence at her first trial of two forged documents, Exhibits 101–B and 110, Orie was charged pursuant to 18 Pa.C.S. § 4101(a)(3) which provides:

(a) Offense defined.—A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1) alters any writing of another without his authority;

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

(3) **utters any writing which he knows to be forged in a manner specified in paragraphs (1) and (2) of this subsection.**

18 Pa.C.S. § 4101(a) (emphasis supplied).[52]

■ In order to be found guilty of forgery under Section 4101(a)(3), the Commonwealth must prove that Orie intended to defraud or injure someone, or acted with the knowledge that she was facilitating such a fraud or injury. *Commonwealth v. Ryan,* 909 A.2d 839, 845 (Pa.Super.2006). Here, the documents at issue were in Orie's sole possession up to the time that she turned them over to defense counsel. The parties stipulated that no alterations to the documents were made by Orie's attorney, his staff, or by the district attorney's office or staff. *See* N.T., 2/27–29/2012, at 118–119. Furthermore, at the first trial, after counsel for Orie used the documents to cross examine Pavlot, Orie submitted the documents in her own case and authenticated them, identifying Exhibit 110, signed by Pavlot, as a memo written by Pavlot to her, and also identifying Pavlot's signature on Exhibit 101–A. *See* N.T., 2/28/2011, at 2837–2842, 2853; N.T., 3/1–2/2011, at 3123–3128. *See also* N.T., 3/14/2012, at 2545–2552; N.T., 3/15/2012, at 2557–2558.[53] We agree with the trial court

---

**52.** The only element at issue for the forgery convictions is knowledge that the documents were forged. *See* Trial Court Opinion, 1/17/2013, at 15. *See also* Orie's Brief at 65.

**53.** At Orie's second trial, Orie testified that the signature on Exhibit 101–B "was the most horrific cut and paste job I have ever seen." N.T., 3/21/2012, at 3758. Also, counsel for

that, though circumstantial, the evidence was sufficient for the jury to find beyond a reasonable doubt that Orie knew that the documents she had provided to her attorney to be used in her defense were forgeries. As the trial court explained:

> [The documents] were in their altered form when in the possession of [Orie]. [Orie] then reviewed them in court during the first trial, confirmed that they were authentic and identified Jamie Pavlot's signature on them. The alterations in the documents were beneficial to [Orie's] case. Clearly, [Orie] had an interest in offering into evidence the documents that were at least, in part, exculpatory. In addition, the forgeries were apparent upon review.

Trial Court Opinion, 1/17/2013, at 17. Accordingly, Orie's sufficiency challenge fails.

■■ Next, Orie challenges the weight of the evidence, claiming that no reasonable juror could infer beyond a reasonable doubt that she was responsible for forging the documents at issue or knowingly introducing them at the first trial.

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice.

*Commonwealth v. Lyons,* —— Pa. ——, 79 A.3d 1053, 1067 (2013).

The Pennsylvania Supreme Court has reiterated the proper standard of review of a weight claim as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new

trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> > Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the

---

Orie, in his opening, told the jury that the "cut and paste signatures" on the documents at issue "look like the product of a grade school student. A fifth grader at best." N.T., 2/27–29/2012, at 95.

evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is *not* exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054–1055 (2013) (citations omitted) (emphasis in original).

Here, the trial court rejected Orie's weight claim, stating:

> At the beginning of the trial, the parties entered into the following stipulation:
>
>> The following stipulation is to be read to you [the jury] and it is as follows: A stipulation has been entered between the Commonwealth and the defense in this case as follows: The jury shall consider as a binding matter of fact in this case that each and every one of those exhibits that were admitted into evidence by and on behalf of the defense during a prior proceeding in this court from February 10, 2011 through and including March 3 of 2011 were then and now are in the same form and appearance as they were when each and every exhibit was delivered by Jane Clare Orie or by members of Orie's senatorial staff who were working on behalf of Senator Jane Care Orie to her attorney for presentation to the trial court. And no alterations were made and *no changes were done on or to* any of the said exhibits by either the attorney for Jane Clare Orie, by any of the staff of that attorney's office or by the district attorney's office or its staff.
>>
>> It is also stipulated that each and every document that was scanned into the computers of the Pennsylvania Senate at the direction of Jane Clare Orie and which were presented to her attorney for use in Orie's defense by Jane Clare Orie or members of her staff who were acting at Orie's direction whether or not actually used in the case as exhibits were then, as they are now, [ ] in the same form and appearance as they were in [when] each and every document was delivered to her attorney by Jane Clare Orie or by members of her staff who were acting on behalf of Jane Clare Orie. No alterations were made and no changes were done on or to those said documents by either the attorney for Jane Clare Orie or by any staff of that attorney's office or by the district attorney's office or its staff.
>
> (N.T. 118–119).
>
> This stipulation established that the forged documents were introduced into evidence in the form they were in when [Orie] turned them over to her attorney. They were not altered in any way after [Orie] relinquished custody to her attorney. This established that they were in their altered form when in the possession of [Orie]. [Orie] then reviewed them in court during the first trial, confirmed that they were authentic and identified Jamie Pavlot's signature on them. The alterations in the documents were beneficial to [Orie's] case. Clearly, she had an interest in offering into evidence the

documents that were at least, in part, exculpatory. In addition, the forgeries were rather apparent upon review.

Trial Court Opinion, 1/17/2013, at 15–17. The trial court concluded that "[t]he jury's verdict was wholly consistent with the evidence and did not shock this Court's sense of justice." *Id.* at 17.

■■■ Orie argues that "[t]here was and is no evidence that she herself forged [the documents at issue] or turned them over to her lawyer knowing that they had been forged; none." Orie's Brief at 62 (footnote omitted). In support, Orie primarily relies on two Pennsylvania decisions, namely, *Commonwealth v. Gibson*, 272 Pa.Super. 451, 416 A.2d 543 (1979) and *Commonwealth v. Karkaria*, 533 Pa. 412, 625 A.2d 1167 (1993). These cited cases, however, are addressed to the issue of the sufficiency, not weight, of the evidence. In any event, this case is distinguishable from *Gibson*, where the Commonwealth's evidence showed mere possession of a forged check. *See Gibson, supra,* at 545. Likewise, the present case is distinguishable from *Karkaria*, where the victim's testimony was inherently unreliable and contradictory. *See Karkaria, supra,* at 1172.

■■■ It is well settled that the jury is free to believe all, part or none of the evidence and must determine the credibility of the witnesses. *See Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct.

2906, 159 L.Ed.2d 816 (2004). Here, the jury had the opportunity to observe the witnesses, listen to their testimony, and view the documentary evidence. After weighing and evaluating the Commonwealth's evidence, the trial judge determined this case was not one in which a new trial should be awarded based upon a weight of the evidence challenge. Having carefully reviewed the record and the trial judge's reasoning, we discern no abuse of discretion in the trial judge's decision to deny Orie's request for a new trial.

## VI. REIMBURSEMENT PURSUANT TO 18 PA.C.S. § 5305

■■■ In the sixth issue raised in this appeal, Orie contends that the trial court erred in ordering her to pay reimbursement, totaling $110,650.00, to the Senate Republican Caucus for monies expended by the Caucus for Orie's defense. Specifically, Orie argues the Caucus "is not a Commonwealth 'agency' under Section 5303(a) [of the Crimes Code,] and therefore, by the plain language of the statute, monies expended by the [C]aucus are not recoverable via restitution." Orie's Brief at 69.[54]

■■■ Questions regarding the court's authority with respect to ordering restitution implicate the legality of a sentence. *Commonwealth v. Langston*, 904 A.2d 917, 922 (Pa.Super.2006).

**54.** In addition, Orie argues that the trial court attributed a greater expenditure by the Caucus for the fees of outside counsel, Conrad O'Brien P.C.—a sum of over $102,000.00—than was evidenced by the record. Specifically, Orie argues that Conrad O'Brien's fees represented overlapping representation of the Caucus and other individuals, outside of Orie herself, at the same time. *See* Orie's Brief at 73.

To the extent that this argument represents a challenge to the discretionary aspects of

sentencing, the Commonwealth has objected to the absence of a Pa.R.A.P. 2119(f) statement in Orie's brief. *See* Commonwealth's Brief at 83. Therefore, we will not address this part of Orie's claim. *See Commonwealth v. Brougher*, 978 A.2d 373, 375 (Pa.Super.2009) (claims regarding the discretionary aspects of sentencing are waived if a Pa. R.A.P. 2119(f) statement is not included in the brief and the Commonwealth raises an objection).

The statute at issue states, in relevant part:

(a) *General rule.*—A public official who is convicted of a felony or a misdemeanor under Federal law or under the laws of this Commonwealth shall be liable for and shall reimburse any public money expended by the Commonwealth to cover the costs incurred by an agency for outside counsel to defend the convicted public official in connection with a criminal investigation and prosecution of such public official.

18 Pa.C.S. § 5303(a). The statute does not define "agency."

Orie relies on the definition of the term "agency" in other contexts in support of her contention that the Caucus is not an "agency" under Section 5303(a). *See* Orie's Brief at 70, *citing* 42 Pa.C.S. § 102 (defining "Commonwealth agency" as "[a]ny executive agency or independent agency"); 101 Pa.Code § 23.221 ("Governmental definitions"); and Black's Law Dictionary (9th ed. 2009) (defining state "agency" as "[a]n executive or regulatory body of a state"). Orie argues that "[a] Commonwealth agency is part of the Executive Branch of the Commonwealth." Orie's Brief at 69. She maintains that "[a] legislative political caucus, such as the Senate Republican Caucus, is by definition, a creature of the Pennsylvania General Assembly, and is neither an executive, nor a regulatory, nor an independent agency of the Commonwealth." Orie's Brief, *id.* at 70. She claims that "[t]o declare the Republican Caucus a state agency under the law violates the separation of powers clause of the Pennsylvania Constitution." *Id.*

Judge Manning has provided a thorough analysis of the statute and the record, in light of the arguments of Orie. As we agree with Judge Manning, we adopt his well reasoned discussion as dispositive of this issue:

... [Orie's] focus on the word "agency" is misleading and her reliance on definitions of that word provided in unrelated statutory provisions misplaced. Section 5303 does not provide a definition for the word agency, but one is not necessary when the statute is construed as a whole. The statute does [ ] define the officials to whom it applies ("public officials") and the money to which it applies ("public monies").

According to the statute a "public official" is, "Any person who is required to file an annual statement of financial interests with the State Ethics Commission as a public official of the Commonwealth in accordance with the act of October 4, 1978." [18 Pa.C.S. § 5303(g) ("Definitions").] Applying this definition, there can be no dispute that [Orie] was a public official. The statute defines "public monies" as, "Any money received by the Commonwealth or any agency of the Commonwealth through taxes imposed pursuant to the act of March 4, 1971 (P.L. 6, No. 2) known as the Tax Reform Code of 1971, and through fees, fines and penalties imposed pursuant to the laws of this Commonwealth." [18 Pa.C.S. § 5303(g) ("Definitions").] The funds used by the Senate Republican Caucus to pay private counsel to represent [Orie] between early November 2009 and December 9, 2009 were, without any doubt, "public monies." [55]

---

**55.** "The Senate Republican Caucus is entirely funded annually by the Commonwealth via an appropriation of funds allocated to the Senate Caucus Operation Account through the annual Pennsylvania Appropriations Act." *Precision Marketing, Inc. v. Commonwealth,* 78 A.3d 667, 674 (Pa.Cmwlth.2013).

It is clear to this Court that the legislative intent in enacting the reimbursement provision was to require any "public official" on whose behalf "public monies" are expended in defense of criminal charges, for which that official is later convicted, to pay the Commonwealth back. No other construction makes sense.

[Orie's] proposed construction of the statute, that it only applies to executive branch agencies, would produce the absurd result of exempting from its reach all members of the legislative branch and all employees of that branch.[1] The General Assembly is presumed not to have intended an absurd or unreasonable result; that good sense and practical utility must always be considered when construing a statute; and that a statute should receive the most sensible construction possible. *Commonwealth v. Bavusa* [574 Pa. 620], 832 A.2d 1042 (Pa.2003). The most sensible construction of this statute is that it applies to individuals based on their status as public officials and their use of public monies to defend themselves from criminal charges, not based on whether or not they were employed in an executive agency.

[Orie] was a public official. Public monies were expended to defend her. She is required to reimburse the Commonwealth of Pennsylvania for the monies spent to defend her.

Three law firms provided services to [Orie], Conrad O'Brien, P.C.; the Law Office of Vincent B. Mancini; and Ward McGough, LLC. The evidence submitted establishes that [Orie] retained private counsel on December 9, 2009. The Court is satisfied that any services provided by Conrad O'Brien or Ward McGough after that date were for representation of the interests of the Senate Republican Caucus only while those services provided prior to that date were for the defense of [Orie]. Counsel for the Senate Caucus stipulated that the amount expended during that time period was $102,441.50.[56] The amount of services provided by Ward McGough, LLC during that period was $3,210.00. The Court is satisfied that these amounts were expended for the defense of [Orie] and are reimbursable by her to the Commonwealth.

The services provided by the Law Office of Vincent B. Mancini present a different factual scenario. It is clear that those services were almost exclusively provided on behalf of the Senate Republican Caucus. However, Judge [Joseph T.] Doyle's appearance as a witness at the hearing held on December 14, 2010 to address [Orie's] pre-trial motions was solely for the benefit of [Orie]. The Senate Republican Caucus had no interest in that hearing. Accordingly, as the billing records establish that the amount incurred in connection with that appearance was $4,999.00, [Orie] will be required to reimburse the Commonwealth in that amount. The total amount that was paid by the Senate Republican Caucus for outside counsel to represent [Orie] was $110,650.50.

Trial Court Opinion, 7/3/2012, at 8–9 (footnote omitted). Accordingly, no relief is due on this claim.

### VII. *MERGER*

 In the seventh issue, Orie challenges the legality of the theft sentences

---

**56.** The Caucus indicated "[t]he amount of monies expended during Conrad O'Brien's approximately one month representation of Senator Orie equal $102,441.50." Caucus's Response to Commonwealth's Petition For Determination of Reimbursement, 6/1/2012 at 2.

on the basis of merger. Our standard of review is well-settled: "A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary." *Commonwealth v. Williams,* 958 A.2d 522, 527 (Pa.Super.2008) (citation omitted).

On each of the two theft convictions, Orie was sentenced to 6 to 24 months' incarceration to be served consecutively, for an aggregate of 12 to 48 months. Orie claims that the two theft convictions should have merged because she was convicted of two counts of theft involving her own senatorial campaigns, but was acquitted of the theft count involving her sister's judicial campaigns. Specifically, Orie argues that the two counts of theft were based on factual allegations encompassing a single course of conduct, and therefore the sentences on the two theft convictions must merge as a matter of law.

Section 9765 of the Judicial Code provides:

No crimes shall merge for sentencing purposes unless the crimes arise from **a single criminal act** and all of the statutory elements of one offense are included in the *statutory elements of the other* offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765 (emphasis supplied).

■ "If the offenses stem from two different criminal acts, merger analysis is not required." *Williams, supra,* 958 A.2d at 527 (citation omitted). In this regard, [t]he threshold question is whether Appellant committed one solitary criminal act. The answer to this question does not turn on whether there was a "break in the chain" of criminal activity. Rather, the answer turns on whether "the actor commits multiple criminal acts be-

yond that which is necessary to establish the bare elements of the additional crime[.]" If so, then the defendant has committed more than one criminal act. This focus is designed to prevent defendants from receiving a "volume discount on crime"....

*Commonwealth v. Robinson,* 931 A.2d 15, 24–25 (Pa.Super.2007) (en banc) (citations omitted).

■ Based on our review, we conclude that the trial court properly rejected Orie's claim, finding that the two theft by diversion of services counts were each based on separate and distinct criminal acts. Specifically, Count One was based upon Orie's use of state employees to conduct fundraising activity between January 2001 and November, 2009, and Count Three was based upon Orie's use of state employees to conduct campaign activities for her own benefit between January 2002 and November 2006 for her 2002 and 2006 election cycles. *See* N.T., 3/22/2012, at 4025. The trial court aptly explained:

[T]he Commonwealth chose ... to bring three separate charges based upon different time periods and the utilization of different employees. [Orie] was acquitted of those charges involving the use of her employees to benefit her sister's campaigns, but convicted of the two counts that alleged her use of employees to benefit her during distinct time periods. As [Orie's] conduct constituted distinct acts, the charges did not merge for sentencing purposes.

Trial Court Opinion, 1/17/2013 at 22. Accordingly, no relief is due on this claim.

## VIII. & IX. *MOTION TO RECUSE/MOTION IN LIMINE*

■ We next address Orie's eighth and ninth issues together, since the two issues are related. In the eighth issue, Orie con-

tends the trial court erred in denying her motion to recuse the Office of the District Attorney of Allegheny County, which alleged "conflict of interest, or personal animus, or the appearance thereof. . . ." Omnibus PreTrial Motion (Section II—Motion to Recuse the District Attorney of Allegheny County), 11/8/2010, at 5, ¶ 20. In the ninth issue, Orie argues that the trial court erred in granting the Commonwealth's motion *in limine* to exclude testimony of prosecution based on improper motive. Orie claims that prosecution against her by the Office of the District Attorney of Allegheny County, headed by Stephen A. Zappala, Jr., "was instigated and pursued with animus and conflict," and in support of her motion to recuse the District Attorney's Office, alleged a history of being "at odds politically with the Zappala family." Orie's Brief at 74–75.

This Court, in *Commonwealth v. Stafford,* 749 A.2d 489 (Pa.Super.2000), *appeal denied,* 568 Pa. 660, 795 A.2d 975 (2000), addressed a conflict of interest claim raised in a case where the defendant had pending civil actions and a private criminal complaint against the district attorney. The *Stafford* Court explained the legal principles relevant to a conflict of interest claim, as follows:

> "A prosecution is barred when an actual conflict of interest affecting the prosecutor exists in the case; under such circumstances a defendant need not prove actual prejudice in order to require that the conflict be removed." *Commonwealth v. Eskridge,* 529 Pa. 387, 604 A.2d 700, 702 (1992). Mere allegations of a conflict of interest, however, are insufficient to require replacement of a district attorney. *See Commonwealth v. Mulholland,* 549 Pa. 634, 702 A.2d 1027, 1037 (1997).
>
> There are no reported cases in Pennsylvania where a defendant sought to remove a district attorney because the defendant has brought civil or criminal allegations against the district attorney for actions arising from the charges against the defendant. We have found an impermissible conflict exists where the district attorney has a financial interest in obtaining defendant's conviction. *See Eskridge,* 604 A.2d at 701 (finding a conflict where district attorney's law firm was representing car accident victims in personal injury suit against defendant). *But see Commonwealth v. Jermyn,* 551 Pa. 96, 709 A.2d 849, 860 (Pa.1998) (finding no actual conflict where prosecutor resigned his executor's duties of victim's estate before prosecuting defendant). We have also found that a new trial is warranted where the district attorney has a non-economic, personal interest in the matter. *See Commonwealth v. Balenger,* 704 A.2d 1385, 1386 (Pa.Super.1997) (granting a new trial where the prosecutor was involved in a romantic relationship with the defendant's wife), *appeal denied* 556 Pa. 670, 727 A.2d 126 (1998). Here, by contrast, the trial court found, and we agree, that the district attorney had no pecuniary or personal interest in seeing appellant prosecuted, and that appellant's conviction would not affect the pending civil suits or criminal complaint. Mere animosity, even it if it existed, is not sufficient by itself to require replacement of a prosecutor. Therefore, the prosecution by the district attorney did not compromise appellant's rights.

*Id.* at 494–495.

The trial court conducted a pretrial hearing on December 14, 2010, at which time counsel for Orie presented the testimony of her former attorney, Jerry McDevitt, in support of the motion to re-

cuse. The trial court described the evidence presented at the hearing as follows:

> Her former attorney testified about two newspaper articles. The first, from the October 25, 2009 Pittsburgh Post-Gazette, stated that the District Attorney's father, retired Pennsylvania Supreme Court Chief Justice Stephen A. Zappala, Sr., held a position with an organization that supported casino development, the Casino Association. (N.T. 12/14/10, p. 346). The other, from the January 24, 201[0] Allentown Morning Call, reported that Senator Orie was raising questions about the propriety of Chief Justice Zappala's activities on behalf of the Casino Association. He also described the circumstances surrounding the execution of the search warrants.

Trial Court Opinion, 1/17/2013, at 9 (footnotes omitted). Subsequently, the trial court denied the motion, explaining:

> I have listened to the evidence on this matter and I have heard the arguments. I am convinced that the law would require an actual conflict of interest and not simply an appearance of one. I do not find on the record here any hard evidence of animus or prosecutorial misconduct. A zealous prosecution is not a wrongful one and I believe the only thing on the record are [ ] allegations and [ ] innuendo[.]

N.T., 12/13/2010, at 481. Based on our review of the record, the arguments of Orie, and the above cited case law, we discern no basis upon which to disturb the trial court's ruling.

 In the same vein, Orie claims that the trial court erred in granting the Commonwealth's motion *in limine* to prohibit evidence of alleged animus on the part of the District Attorney. Orie contends that a "long-standing political feud between the Zappala Family and the Orie Family" was "part of the *res gestae* of this case, and

without it [Orie's] jury was deprived of understanding the nature of the charges and why they were brought by this particular District Attorney." Orie's Brief at 83–84.

 Preliminarily, we note:

> When reviewing [a ruling on] a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion.
>
> A trial court's ruling regarding the admissibility of evidence will not be disturbed "unless that ruling reflects" "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly 'erroneous.'"

*Commonwealth v. Bozyk,* 987 A.2d 753, 756 (Pa.Super.2009) (citations omitted).

Our review of the record confirms the decision of Judge Manning, who explained his ruling as follows:

> ... [Orie] tried to build a case that this prosecution was somehow in retaliation for [Orie's] position on casino gambling. She failed to do so. There was simply nothing in the record to suggest that the motivation for § the institution of the investigation was anything other than the District Attorney carrying out the obligations of his office to investigate criminal activity brought to his attention. It must be remembered that this investigation began only after a graduate student interning in the Senator's office, with no apparent connection to the District Attorney, reported what she perceived to be illegal conduct by the Senator and her staff; a perception that the jury in the second trial found to be wholly accurate. From that point, the District Attorney had an obligation to

investigate and, if criminal conduct were discovered, to prosecute. The claim that the charges were a result of a political feud was a red herring raised by the defense that had no basis in fact.

> In ruling on this matter before the first trial, this Court said:

> THE COURT: That doesn't give you a right to try some allegations and innuendoes against the prosecutor and that is all that we have. I have not seen one piece of solid evidence that you showed me. If you show me that at the time of trial maybe I will allow it.

> Right now the motion *in limine* is granted with the proviso that if you can show me something I will amend it.

(N.T., 12/15/2010, p. 501). [Orie] did not, at either the first trial [or] the second trial, offer anything in addition to that which was offered at the pre-trial hearing, which this Court found to be nothing more than "allegations and innuendoes" without any evidence to support them.

In addition, the reasons for bringing the charges in this matter were not relevant. In *Commonwealth v. Evans,* the Superior Court held:

> Among defendant's complaints is the refusal of the trial judge to affirm a point for charge on the subject of political bias. The defendants have submitted two points on this subject. One, the trial [j]udge modified, affirmed, and read to the jury; and the other was refused. The point affirmed [related to] bias, interest, prejudice or animosity of any witness to be considered by the jury in determining credibility. The other point concerned the generalized statement on political bias in the institution of the proceedings against defendants.

> [A]side from the fact that the point was to[o general and nebulous], it is clear that the motive for instituting proceedings is not a relevant consideration at the trial except as it [bears] on credibility. *See Commonwealth ex rel. Flower v. Superintendent of Philadelphia County Prison,* 220 Pa. 401, 69 A. 916 (Pa.1908). A defendant cannot escape criminal liability, where the evidence indicates guilt, on the basis that the motive of the prosecutor may have been other than the proper administration of justice. The motive may be relative on the question of credibility of any witness who testifies and the point in this regard request by defendants was affirmed.

154 A.2d 57, 99[, 190 Pa.Super. 179] (Pa.Super.1959).

This defendant was not precluded from cross-examining any witness as to that witness['s] own personal bias or prejudice. What [Orie] was not permitted to do was to introduce wholly irrelevant claims that the prosecution of the defendant was motivated by political competition between the family of the District Attorney and the defendant's family. Accordingly, the Court did not err in precluding such evidence.

Trial Court Opinion, 1/17/2013, at 9–12.

Accordingly, we conclude Orie's claim that the trial court erred in granting the Commonwealth's motion *in limine* fails.

## X. *CONFLICT OF INTEREST STATUTE*

In her final claim, Orie challenges the Pennsylvania conflict of interest statute, 65 Pa.C.S. § 1103. Orie claims the statute is unconstitutionally vague on its face as well as vague and overbroad because it violates her right of free speech and association protected by the First Amendment of the

United States Constitution and Article I, Section 7 of the Pennsylvania Constitution.

Our review of this claim is guided by the following principles:

When evaluating challenges to a statute—whether those challenges are based on vagueness ... or any other considerations—we must also keep in mind that there is a strong presumption that legislation is constitutional. A party challenging legislation bears a heavy burden to prove otherwise. Accordingly, this Court will strike the statute in question only if Appellant convinces us that it clearly, palpably and plainly violates the federal or state constitutions.

*Commonwealth v. Thur,* 906 A.2d 552, 560–561 (Pa.Super.2006) (citations omitted), *appeal denied,* 596 Pa. 745, 946 A.2d 687 (2008).

The conflict of interest statute states, in relevant part: "No public official or public employee shall engage in conduct that constitutes a conflict of interest." 65 Pa.C.S. § 1103(a). The term "conflict of interest" is defined in the statute as follows:

"Conflict" or "conflict of interest." Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. The term does not include an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a member of his immediate family is associated.

65 Pa.C.S. § 1102. Based on our review, we find no merit in Orie's challenge.

In *Commonwealth v. Habay,* 934 A.2d 732 (Pa.Super.2007), *appeal denied,* 598 Pa. 746, 954 A.2d 575 (2008), the defendant, a member of the Pennsylvania House of Representatives, was convicted of one count of conflict of interest, 65 Pa.C.S. § 1103(a), based on evidence that he had directed several state employees to conduct political work for him in the legislative office, while the employees were being paid by the taxpayers to perform work for constituents. *See id.* at 736. Habay claimed that the statute was facially vague.

A panel of this Court rejected Habay's challenge, and upheld the statute, stating:

... [W]e note that vagueness challenges may be of two types. First, a challenge of facial vagueness asserts that the statute in question is vague when measured against any conduct which the statute arguably embraces. Second, a claim that a statute is vague as applied contends the law is vague with regard to the particular conduct of the individual challenging the statute.

For a court to entertain challenges of facial vagueness, the claims must involve First Amendment issues. When a case does not implicate First Amendment matters, vagueness challenges are to be evaluated in light of the facts at hand— that is, the statute is to be reviewed as applied to the defendant's particular conduct.

[Habay] contends the conflict of interest statute, discussed *supra,* is vague both facially and as applied to him. He claims the vagueness arises because the statute does not define the phrase "Use ... of the authority of his office or employment" or the phrase "for the private pecuniary benefit of himself[.]"

[Habay] does not develop an argument demonstrating that his claim is a First Amendment issue. As such, we need only determine whether the statute is vague as applied to him. For the reasons that follow, we find the statute is not vague under the facts of this case. In any event, as our discussion will also show, even if [Habay's] claims did implicate the First Amendment, it is patently clear that the statute at hand is not vague on its face.

The phrases challenged by [Habay] use commonly understood words in readily comprehensible ways. There is nothing unclear about the concept of using the authority of an office to obtain private pecuniary benefit. The statute prohibits people who hold public offices from exercising the power of those offices in order to secure financially related personal gain.

[Habay] had fair notice and could easily predict that, in his capacity as an elected representative, he was not allowed to direct state-paid employees under his authority to conduct campaign and/or fundraising-related work, during state-paid time, for his personal benefit. Through his actions, [Habay] secured a private monetary advantage for himself because, by having state employees work for him on his campaign and/or fundraising tasks while they were being paid by the state, he obtained the benefit of free campaign work funded by the taxpayers. In this same vein, [Habay], by virtue of using state employees, did not have to spend his own money to pay workers involved in such matters. The words of the statute surely allowed [Habay] to understand that such conduct was prohibited by law. He could have easily gauged his contemplated actions and predicted they were unlawful.

Given the straightforward language of the statute at hand, we find it sets forth the crime of conflict of interest with sufficient definiteness that [Habay], and indeed any ordinary person, could understand and predict what conduct is prohibited. It speaks fair warning of the proscribed conduct. Moreover, we see nothing in the statute that would promote arbitrary or discriminatory enforcement. As [Habay] has failed to convince us that the statute violates the federal or state constitution, his vagueness claims fail.

\* \* \*

Strictly, unconstitutional overbreadth relates only to First Amendment matters of free speech. However, the general notion of overbreadth is sometimes applied in non-speech cases where, for example, the question is whether the contested statute sweeps so widely as to punish constitutionally protected, as well as unprotected, activities.

[Habay] complains that the conflict of interest statute is overly broad. He contends, for example, that the statute would proscribe legal conduct such as tending to constituents' needs if that conduct somehow resulted in gaining future public office, presumably through re-election. [Habay's] argument is simply unpersuasive. Nothing in the statute, as written or as applied in this case, reaches protected behavior. To the contrary, the statute targets the unlawful behavior by public officials of using the authority of their public offices for their own private, pecuniary benefit. This claim lacks merit.

*Id.* at 738–739. *See also Commonwealth v. Feese,* 79 A.3d 1101, 1128 (Pa.Super.2013) ("[T]he conflict of interest provisions of the Ethics Act are neither so vague as to encourage arbitrary or discriminatory enforcement, nor do they lack sufficient definiteness such that an ordinary person

could not understand and predict what conduct is prohibited.").

Here, Orie presents a challenge of facial vagueness involving First Amendment issues—a claim that was not developed in *Habay*—and also involving Article I, Section 7, of the Pennsylvania Constitution. Orie argues that the conduct upon which the conflict of interest convictions was based, specifically, using state employees to conduct political campaign activities, including fundraising, on state time with state resources, "constitutes constitutionally-protected speech and association because it is so intimately connected with being in politically-elected office; it is fundamental to our governmental way of life." Orie's Brief at 92–93.

 We disagree. We find the statute places no restrictions on a public official's federal or state protected rights of expression and association, but only prohibits officials from using state-funded resources for non-*de minimis* private pecuniary gain. Judge Manning cogently explained:

> [Orie] claims that the statute . . . is ambiguous as to what conduct is considered campaign related and what conduct is related to the official duties of the office. Arguing, in essence, that many things that a public official does, even those strictly related to their official duties, can also benefit the public official politically and aid them in their effort to get re-elected. For example, when a public official is invited to speak to a large gathering of citizens in their official capacity, there is an *obvious political benefit* to doing so. There may be those in the audience who become supporters, financial and otherwise, as a result of hearing and meeting the official. The allegations in this case, however, do not involve activities that have such dual effect.

> [Orie] is not charged with violating the statute because she had persons employed in her office engage in activities that primarily served the needs of her constituents but which also had the added benefit of making those constituents more likely to vote for her or support her financially in future campaigns. The charges are based on allegations that she had those employees engage in activities that were *solely* campaign related; activities that were wholly unrelated to any official duties. . . .

> There is a clear line created in the Statute and it is the line between using state resources, including employees, for state-related purposes and using those resources to provide a financial benefit to the office holder or a member of the immediate family.

Trial Court Opinion, 1/24/2011, at 9–10 (emphasis in original). Accordingly, we reject Orie's final claim.

Based on our reasoning as set forth above, we conclude there is no basis upon which to disturb the judgment of sentence imposed by Judge Manning. Accordingly, we affirm.

Judgment of sentence affirmed.