J-S47024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DERRICK JOHNSON | |
| Appellant | No. 2160 MDA 2014 |

Appeal from the Judgment of Sentence June 25, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005271-2013

BEFORE:  ALLEN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 07, 2015**

Derrick Johnson appeals from the judgment of sentence imposed on June 25, 2014, in the York County Court of Common Pleas, made final by the denial of post-sentence motions on November 24, 2014.  Johnson was sentenced to a term of life imprisonment after a jury convicted him of first-degree murder in the shooting death of Trevhan Kent ("the victim"). Johnson's sole issue on appeal challenges the weight of the evidence supporting his conviction.  We affirm.

The testimony presented during Johnson's jury trial was as follows. Lamin Goodman testified that, on the evening of January 13, 2013, he and the victim, were playing pool at Temptations Bar on East Market Street in

_____

[*] Retired Senior Judge assigned to the Superior Court.

York, Pennsylvania. Some words were exchanged with another group of men, one of whom was Johnson. Goodman testified that he and the victim decided to leave, but one of the men in Johnson's group punched the victim in the face. When Johnson moved to join the fray, Goodman jumped in to stop him. The fight ended ten to fifteen minutes later. Sometime during the fight, the victim was stabbed in the rib area. *See* N.T., 6/9-11/2014, at 116-126.

Goodman explained that a month later, on February 17, 2013, he received a text message from the victim, stating that the victim was at Pandora's, another bar in York, and "the same guys that [they] had an altercation with prior" were at the bar. *Id.* at 128. Goodman went to meet the victim, but by the time he arrived, Johnson and his cohorts had left. Goodman and the victim then decided to go to Temptations. While they were waiting for drinks, they noticed Johnson and another man try to enter the club, but were turned away by the bartender. Goodman testified that he and the victim stayed at Temptations for another 45 minutes because they "didn't want to get into any problems." *Id.* at 136. After having the bartender check to ensure no one was waiting on the street, Goodman and the victim then left through the door of the adjoining bar, NV's Bar and Grill. As they began to walk home, Goodman heard a gunshot coming from behind. When he saw the victim start running, he fled in another direction, and eventually ran into a police officer. Goodman did not see who shot at him and the victim. *See id.* at 140-144.

Amanda Trout testified that she was working as a dancer at Temptations on the night of the shooting. After her shift, she left the club through the door to NV's Bar and Grill. At that time, she saw Johnson, whom she knew as "Ace," and another man standing in the covered entrance of Temptations. *Id.* at 168-170. She said, "Hey, what's up?" and found it "unusual" that Johnson did not respond because she "normally talked to him, maybe once a week or so." *Id.* at 170. She decided to go to her friend's house across the street from the club. As she closed the door, she heard a gunshot. Although she did not see the shooter, Trout testified that the only people she noticed on the street when she left the club were Johnson and his friend. *See id.* at 170-172.

Khadijah Weary testified that she was also working as a dancer at Temptations on the night of the shooting, and that Johnson, whom she knew as "Ace" and Damian Banks,[1] whom she called "Dre," were there to give her a ride home. When she walked outside and greeted the men, she gave them both a hug, and felt that each had a gun on his hip. Johnson even pulled back his jacket to show her the gun. *Id.* at 243-245, 248-249. Weary testified that Johnson told her "everything was going to be okay and to go to the car." *Id.* at 250. Weary then waited in the car for about a half an hour before she heard three gunshots. Immediately thereafter, Weary

---

[1] Banks and Weary were dating at that time. *Id.* at 245.

saw Johnson and Banks running to the car. She began screaming at them to take her home, and when she leaned up from the backseat, she saw each man had a gun in his lap.

Weary conceded that she gave several statements to police that differed from her trial testimony. *See id.* at 260-265. However, she explained that she was "scared for [her] life and scared that [Johnson and Banks were] going to hurt [her.]" *Id.* at 266. Weary also acknowledged that she lied to protect her then boyfriend, Banks. *Id.* at 274.

Damian Banks, who was facing murder charges for the same incident, also testified on behalf of the Commonwealth. Banks corroborated Goodman's story about the January 2013 bar fight involving Goodman and the victim. Banks acknowledged that he had punched the victim in the face after they started arguing. However, he did not know who stabbed the victim that night. *See id.* at 292-295. A few weeks later, Banks and Johnson saw the victim on the street, and Johnson told Banks, "I seen him a couple of times, and I got to do something before he do something to me." *Id.* at 296.

Banks' testimony regarding the night of the shooting largely confirmed the account provided by both Goodman and Weary.[2] Banks explained that

---

[2] Banks' testimony differed somewhat from Weary's in that he claimed he was not carrying a gun that night, and that Weary never hugged Johnson. *Id.* at 309-310.

he and Johnson first saw the victim at Pandora's earlier that evening. He testified that Johnson wanted to "do something" to the victim there, but Banks told him there were too many cameras. *Id.* at 298. They ran into the victim again, however, when they went to Temptations to pick up Weary from work. When Weary emerged from the club, she gave him a hug, and he told her to "go to the car, I am about to go holler at my peoples real quick." *Id.* at 299. Banks testified he and Johnson were waiting in the covered entryway to Temptations, when Johnson saw the victim and Goodman exit the club through the bar next door.[3] Johnson said, "there they go right there," pulled a gun from his hip and fired a shot, using a laser for accuracy, at the victim's back. *Id.* at 303. Banks and Johnson both ran to the car and fled the scene.

Banks also testified that after he was arrested for the murder, he was in the York County Prison in a cell near Johnson. At one point, Johnson told him, "You and I are the only ones that know what happened, and you and I both know I did it." *Id.* at 307. Banks confirmed that when Johnson made the statement, Banks' cellmate, Samuel Lawson, overheard the conversation.

On cross-examination, Banks admitted that he was the one who assaulted the victim during the January 2013 altercation. Furthermore, he

---

[3] Banks testified he was waiting for a friend to bring him "some weed." *Id.* at 312.

acknowledged that he expected his first-degree murder charge would be dropped as a result of his testimony. ***See id.*** at 308, 313. However, he further testified no concrete agreement had been reached.[4] ***Id.*** at 290.

The Commonwealth also presented the testimony of Samuel Lawson who corroborated Banks' testimony regarding the conversation between Banks and Johnson at the York County Prison. According to Lawson, Banks asked Johnson, "Why am I here?" ***Id.*** at 341. Lawson testified that Johnson replied,

> I'm not the reason you're here, the bitch Khadijah, ask her. And he also stated that, you don't have anything to worry about, because I did it. The only person that knows what happened that night is me and you.

***Id.*** Under cross-examination, Lawson admitted he did not see Johnson when he made the statement, because Johnson was in the shower, but he did see him immediately thereafter. ***Id.*** at 343, 347. He also conceded he was facing a felony drug charge for delivering cocaine, and he expected some type of consideration in exchange for his testimony. ***Id.*** at 345.

Johnson presented only two witnesses in his defense.[5] Private investigator George Morrison testified that when he interviewed Amanda Trout, she admitted to him she was a heroin addict, and had been using four

---

[4] We note that on June 26, 2014, the murder charge pending against Banks was withdrawn. ***See*** CP-67-CR-3933-2014.

[5] Johnson did not testify on his own behalf.

to six bags of heroin a day at the time of the shooting. *Id.* at 359-360. Morrison also testified Trout asked him questions about recanting her former statement. *Id.* at 360. Additionally, Kalvin Beady testified he was incarcerated with Banks and Johnson at the time Lawson allegedly overheard Johnson confess to the crime. Beady stated he heard the conversation in question, and at no time did either Banks or Johnson state Johnson was the shooter. *Id.* at 363.

Johnson was eventually apprehended in Memphis, Tennessee, while using a fake driver's license, and charged with first-degree murder. A jury trial was conducted from June 9, 2014 through June 11, 2014. On June 11, 2014, the jury returned a verdict of guilty on the charge of first-degree murder. Thereafter, on June 25, 2014, Johnson was sentenced to a mandatory term of life imprisonment. He filed a timely post-sentence motion challenging both the weight and sufficiency of the evidence, which the trial court denied on November 24, 2014. This timely appeal followed.[6]

Johnson's sole issue on appeal asserts the verdict is against the weight of the evidence.[7]

---

[6] On December 17, 2014, the trial court ordered Johnson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Johnson complied with the court's directive, and filed a concise statement on January 6, 2015.

[7] Johnson preserved this issue in his timely filed post-sentence motion. *See* Pa.R.Crim.P. 607.

A challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013) (citation omitted), *cert. denied*, 134 S. Ct. 1792 (U.S. 2014).

In its seminal decision, ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000), our Supreme Court detailed the unique circumstances surrounding this Court's review of a challenge to the weight of the evidence:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion. This court summarized the limits of discretion as follows:
>
>> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or

- 8 -

arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Id.* (citations omitted). Moreover, when considering a weight claim, we must continue to bear in mind that credibility determinations are solely within the province of the jury, which is "free to believe all, part or none of the evidence[.]" **Commonwealth v. Orie**, 88 A.3d 983, 1017 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014).

In the present case, Johnson argues the verdict was against the weight of the evidence because he was not the person who shot the victim. Further, he contends the only two witnesses who identified him as the shooter – Damian Banks and Samuel Lawson – were unworthy of belief.

First, Johnson asserts Banks testified "to further his own interest and avoid a murder charge." Johnson's Brief at 10. He emphasizes the following facts established at trial: (1) Banks possessed a gun on the night of the shooting; (2) Banks was present at the time of the shooting; (3) Banks first assaulted the victim during the January 2013 brawl; and (4) Banks testified in exchange for having the charges reduced or dismissed. **Id.** Moreover, Banks' girlfriend, Weary, admitted to lying to the police to protect Banks. **Id.** at 11.

Second, with regard to Lawson, Johnson emphasizes (1) Lawson was Banks' cellmate; (2) Lawson admitted he did not physically see Johnson when Johnson admitted he shot the victim; (3) Lawson agreed that Banks'

story about the shooting changed "a little bit[;]" and (4) another inmate present at the time of the conversation did not hear Johnson confess to the crime. ***Id.*** at 11.

Johnson claims "this is precisely the type of case which should shock the Court's sense of justice." ***Id.*** at 12. He further argues:

> The key piece of evidence presented by the Commonwealth happened to be the only other person who could have been the shooter and as such would be the only person to benefit from such testimony. [Johnson] argues that such testimony, without some form of corroboration, should be of such polluted value that any verdict derived from it should shock the Court's sense of justice.

***Id.***

In addressing Johnson's weight claim in his post-sentence motion, the trial court found "[t]here [were] no extraordinary circumstances in the case at hand." Order, 11/25/2014, at 5. The court explained:

> None of the evidence admitted at trial calls into question the jury's verdict. Moreover, [Johnson's] contention that the testimony of the only eye[]witness to the shooting is unbelievable because that witness may also have had a motive to shoot the [v]ictim is an issue of witness credibility. Furthermore, the testimony of other witnesses admitted at the trial in many respects confirmed or corroborated the testimony of the eye[]witness. Finally, … the court did give the jury the standard "corrupt and polluted source" instruction regarding that eyewitness's accomplice testimony.

***Id.*** at 5-6. ***See*** N.T., 6/9-11/2014, 419-410 (jury charge regarding precautionary rules when Commonwealth witness may be accomplice to crime).

After an independent review of the record, the parties' briefs and the relevant case law, we find no basis to disturb the ruling of the trial court. The jury was presented with evidence that both Banks and Lawson may have had a motive to lie about Johnson's culpability. However, the jury found both witnesses' accounts credible. Moreover, many of the details in Banks' testimony were corroborated by the other witnesses presented by the Commonwealth. **See** Trial Court Opinion, 2/24/2015, at 3. Other than questioning the jury's credibility determinations, Johnson has not demonstrated how the trial court abused its discretion in denying his weight of the evidence claim. Accordingly, we affirm the judgment of sentence.[8]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2015

---

[8] We note that Johnson also contends the verdict would be against the weight of the evidence if the jury had determined he was guilty as an accomplice to the murder. **See** Johnson's Brief at 12-13. However, because we have concluded, *supra*, that Johnson's conviction as the principal actor in the crime, *i.e.*, the shooter, was not against the weight of the evidence, we need not address his **potential** role as an accomplice to the crime.