J-S54004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT EUGENE WEBB | : | |
| | : | |
| Appellant | : | No. 1618 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 29, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000331-2018

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 19, 2019**

Robert Eugene Webb appeals from his August 29, 2018 judgment of sentence of one to three years of incarceration, which was imposed following his conviction at a jury trial of criminal attempt – forgery.  We affirm.

The record reveals the following.  On October 6, 2017, Appellant entered the York Traditions Bank in York Township, Pennsylvania, and presented for payment a $2,271.71 check, payable to him, drawn on the account of Yorktowne Settlement Company, a title insurance agency.  The check was endorsed with Appellant's signature.  A bank employee contacted Yorktown Settlement to investigate whether the check was genuine, and spoke to Ms. Sharon Reimold, the owner and President of the company.  *See* N.T., 7/17/18, at 67.  Ms. Reimold ascertained that Appellant was not a client of Yorktown Settlement, and that the check issued to Appellant was not genuine.  *Id*. at 68-69.  She conveyed that to bank personnel, who summoned police.

Officer Andy Mallette of the York Area Regional Police Department responded. He interviewed Appellant in the bank, and Appellant told him that he received the check from a friend at Yorktowne Settlement Company, but did not name the friend or provide a reason why the friend had given him the check. *Id*. at 80. He identified the signature on the back of the check as his signature. *Id*. at 81. Sergeant Peter Montgomery arrived at the bank after Appellant had been arrested. He recalled Appellant telling the two officers that a co-worker gave him the check, but he did not identify the co-worker or offer any explanation as to why the co-worker would give him such a check.

Appellant was transported to the police station. Detective Sergeant Weyth Barley, Jr. interviewed Appellant in the holding area. Appellant told him that a friend gave him the check. Officer Buschman entered the room, and he and Appellant argued. *Id*. at 97. Appellant then told police that he had been in Harrisburg, where he was picked up by two black males in a blue car at Sixth and Raleigh. *Id*. The men asked him for his identification, took it, and disappeared for a while. They returned with the check, and drove him to the bank in York to cash it. *Id*. at 98.

Ms. Reimold testified at trial that the check bore a hologram sticker logo that was not present on genuine Yorktowne Settlement checks and was of a different color. *Id*. The number of the check had yet to be issued by the company. *Id*. at 70. After examining the signature of the person authorizing payment of the check, she testified that it was not her signature or the signature of anyone authorized to sign the company's checks. *Id*.

The jury found Appellant guilty of attempted forgery, and he was sentenced on August 29, 2018. He filed a timely post-sentence motion challenging the weight of the evidence, which was denied by order of September 14, 2018. Appellant filed this appeal on September 26, 2018, and complied with the trial court's order to file a concise statement of errors complained of on appeal. The court issued its Pa.R.A.P. 1925(a) opinion, and the matter is ripe for our review.

Appellant presents two issues for our consideration:

1) The Commonwealth failed to present sufficient evidence in order to convict Appellant beyond a reasonable doubt of criminal attempt – forgery because there was no evidence Appellant knew the check he passed was fake, nor that he intended to pass a fake check.

2) The trial court erred when it denied Appellant's request for a new trial because the weight of the evidence demonstrated that Appellant did not know the check he passed was fake, nor that he intended to pass a fake check. The jury's verdict shocks the conscience and a new trial should have been granted.

Appellant's brief at 5.

Our standard of review for a sufficiency challenge is well settled:

A claim challenging the sufficiency of the evidence presents a question of law. We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict."

Our Supreme Court has instructed: The facts and circumstances established by the Commonwealth need not preclude every

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

In addition, "the Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant."

*Commonwealth v. Green*, 203 A.3d 250, 252-53 (Pa.Super. 2019) (*en banc*) (quoting *Commonwealth v. Orie*, 88 A.3d 983, 1013-14 (Pa.Super. 2014) (citations omitted).

The underlying offense is forgery.

(a) **Offense defined**. A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitation a fraud or injury to be perpetrated by anyone, the actor:

(1) alters any writing of another without his authority;

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

(3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

(b) **Definition**. — As used in this section the word "writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit

cards, badges, trademarks, electronic signatures and other symbols of value, right, privilege, or identification.

18 Pa.C.S. § 4101.

A criminal attempt is committed when "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).

Appellant contends that although the Commonwealth offered evidence that the check was fraudulent, it failed to produce either direct or circumstantial evidence that Appellant knew the check was fraudulent. He relies upon *Commonwealth v. Gibson*, 416 A.2d 543 (Pa.Super. 1979), for the proposition that the mere possession of a fraudulent check does not prove that the individual forged the check himself, or that he knew it was forged. Appellant's brief at 12.

The Commonwealth counters that Appellant's "knowledge that the check was fraudulent was apparent based upon the totality of the circumstances." Commonwealth's brief at 13. The Commonwealth points to Appellant's inconsistent stories to police when he was questioned about the origin of the check, and cites *Commonwealth v. Bradley*, 69 A.3d 253, 258-59 (Pa.Super. 2013), holding that such contradictory accounts are circumstances indicative of guilt. When first confronted at the bank by Officer Mallette, Appellant claimed the check belonged to him and questioned why the police had been called. Shortly thereafter, he told the police officer that he obtained the check from a friend who worked at Yorktowne Settlement, but he did not

know the friend's name.  Nor could he explain why he was entitled to the funds.  After he was arrested and awaiting transport to the police station, Appellant said he received the check from a co-worker, but again he could not identify that person.  Upon further questioning at the police station, Appellant told police that two men in a blue car picked him up in Harrisburg, took his identifying information, left him in the car, and returned with the check payable to him.  They drove him to the bank in York so that he could cash it.  Again, he could not describe the two men, their car, or explain why he would have received the check.  Such inconsistencies, according to the Commonwealth, permitted the jury to infer that Appellant knew the check was fraudulent.  Commonwealth's brief at 16.

In support of its position that the evidence was sufficient, the Commonwealth directs our attention to **Green**, **supra**.  Green cashed a fraudulent check on which he was the payee, and which listed his address, admittedly knowing that he was not entitled to the funds.  This Court held that the foregoing facts, together with Green's statement to police that he "only did it once," and his denial of any knowledge as to the origin of the checks, was sufficient evidence to prove that he knew that the check was fraudulent.  The Commonwealth maintains that although Appellant did not admit that he only did it once, under the circumstances, he uttered the check knowing that it was not legitimate.

The Commonwealth distinguishes **Gibson**, as the instant case involved more than mere possession of a forged personal check made payable to cash. Appellant's name and address appeared on the check, and Appellant had no connection to Yorktowne Settlement, the payor. Nonetheless, Appellant admittedly endorsed the check and tried to cash it.

We agree with the Commonwealth that the instant case is more analogous to **Green** than **Gibson**. As in **Green**, the check was made payable to Appellant, bore his address, and was endorsed by him, and he had no connection to or expectation of payment from the issuing company. Although Appellant did not admit that he "only did it once" as in **Green**, his inconsistent explanations of how he acquired the check permitted the jury to reasonably infer that he endorsed and presented it for payment knowing that it was fraudulent. Hence, the evidence was legally sufficient to support Appellant's conviction of attempted forgery.

Appellant's final contention is that the jury's verdict was against the weight of the evidence. The law is well settled that the weight of the evidence is a matter for the fact finder, who is free to believe all, part, or none of the evidence and to assess the credibility of the witnesses. "A new trial is not warranted because of a mere conflict in the testimony. . . . Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal

weight with all the facts is to deny justice." *Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa.Super. 2016) (*en banc*).

Our role on appeal is limited to determining whether the trial court abused its discretion in determining that the verdict did not shock its conscience. *Id*. In doing so, we do not review the underlying question whether the verdict is against the weight of the evidence, but rather, the trial court's exercise of its discretion. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Orie*, *supra* at 1015. This is why it is often said that a trial court's denial of a post-sentence motion "based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008).

The trial court correctly stated that the verdict was not to be disturbed on such a basis unless it was "so contrary to the evidence as to shock one's sense of justice." Trial Court Opinion, 6/18/19, at 12, 13 (quoting *Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011)). The court noted that there was evidence that the jury could have relied upon to acquit Appellant, such as the fact that he used his real name and did not flee prior to the arrival of police. Nonetheless, in light of the evidence in support of conviction, the trial court stated it was not shocked by the verdict and, thus,

could not disturb it.  ***Id***. at 14.  We find no abuse of discretion on the part of the trial court.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/19/2019